Gaither, et al vs. Gaither.

HENRY GAITHER, *et al.*, plaintiffs in error, *vs.* ELIZABETH GAITHER, defendant in error.

[1.] A. qualified as the executrix of the will of her deceased husband, and proceeded to execute it ; and thus *admitted* it to be his will. The other legatees did not act, in any way, on this admission. She moved to set aside the probate of the will.

*Held*, That her admission did not conclude her from making the motion.

[2.] A motion by the executor to set aside a probate, is not the same thing, as an application by the executor, for leave to renounce the execution of the will.

[3.] A judgment admitting a will to probate in common form, does not estop the executor from moving to have the probate set aside, and the will declared null.

Gaither et al. vs. Gaither.

[4.] The widow of A., who died childless, qualified as his executrix. The will gave her the whole property for her life. She moved to set aside the probate, *without having "surrendered or returned the legacy," she took under the probate.*

*Held,* That she might make the motion, notwithstanding the failure to make such surrender.

Caveat to will. In Putnam Superior Court. Tried before Judge HARDEMAN, at September Term, 1857.

Brice T. Gaither died in September, 1853, and the following paper was admitted to probate, in common form, as his last will and testament, viz:

"GEORGIA, } I, Brice T. Gaither, of the State and NEWTON COUNTY, } county aforesaid, declare and publish the following to be my last will and testament:

I desire, in the first place, that all my debts be paid as soon as it can be conveniently done.

Secondly. That should there be born unto me a posthumous heir, or heirs, that in that event, my estate be equally divided between my wife, Elizabeth Gaither, and said heir or heirs; but should no heir be born of said wife unto me, that my wife have a lifetime interest in the whole estate; but at her death, one-half of said estate I bequeath to my brothers, Augustus Longstreet Gaither, Eli D. Gaither, William H. Gaither, Herbert B. Gaither and Alexander Means Gaither, and my sisters, Mary Read Gaither and Margaret Ella Gaither, to be equally divided between them. It is my wish that none of the negroes belonging to my estate should be sold unless it shall be found necessary in order to prevent the separation of husband and wife, or except in cases of habitual insubordination. I wish that my father, if it be agreeable to his feelings, permit my negroes to remain on his farm, at the place where they now are, until they can be removed to some other suitable place.

And I do hereby nominate and appoint my beloved wife, Elizabeth Gaither, to be my sole executrix.

Gaither et al. vs. Gaither.

In testimony whereof, I have hereunto set my hand and seal, this the 16th September, 1853.

BRICE T. GAITHER. [L. S.]

Signed, sealed, declared and published in the presence of us, the subscribers, who subscribed in the presence of the testator, and in the presence of each other.

GEO. F. PIERCE,
LUTHER M. SMITH,
WM. A. BASS."

The widow of deceased qualified as executrix. She afterwards, in 1856, obtained a *rule nisi* against the other legatees therein named, to show cause why the probate of said will should not be set aside and revoked, on the following grounds:

1st. Because of the want of testamentary capacity.

2d. Because the will was written at the dictation of Henry Gaither, the father of deceased.

3d. Because of the undue influence of Henry Gaither.

The case coming up, on the appeal, counsel for respondents moved to dismiss the rule, on the grounds:

1st. Because caveator, having qualified as executrix, received letters testamentary, and proceeded to execute said will, was estopped from calling for a probate of the same in solemn form, and from moving to vacate the former judgment of probate.

2d. Because having participated in the proceedings for probate, before the Court of Ordinary, she cannot now vacate that judgment, or call for probate in solemn form.

The Court refused the motion, and counsel for respondents excepted.

*Geo. F. Pierce*, one of the witnesses to the will, testified, that he witnessed the will on the night testator died; testator was powerfully excited in a prospect of death, and an

avowed certain assurance of salvation; saw no evidence of delirium; when the will was spoken of, consented that his father and Luther Smith should retire for the purpose of writing it; and when they returned, and the will was read, he seemed to understand and be satisfied with it.   Witness was sent for between 12 and 2 o'clock at night; the messenger went after Smith to write the will; testator was much excited, and his religious fervor manifested itself by expressions of praise to God, and in terms of great affection for his wife.

Dr. Henry Gaither went to the bedside to talk to him about his will; Dr. H. Gaither first spoke of a will; when the will was read, testator made no reply, but by look and gesture, as witness understood him, assented to it.   He was told to sign it, and did sign it.   I did not consider him in a business frame of mind, or as able to criticise, accurately, the terms, provisions and limitations of the will or the estate created thereby, but yet, as knowing what he was about, and as acting understandingly.

*William Bass*, another witness to the will, was with testator for an hour before making the will; conversed rationally.   After the will was read in presence of Mrs. Gaither, testator asked his wife if it suited her; she answered that it did, and he then signed it.   When Mr. Smith came, he and Dr. Gaither had some conversation; they then went together to the bedside; Dr. Gaither told Brice, if he wished to make a will, Mr. Smith would arrange it; the reply was not heard by witness.   Dr. G. then asked if he wanted to dispose of his property in the manner he had told him, Dr. G?   Brice said he did.   Smith and Dr. G. then retired to write the will.

This witness was asked if he did not write a letter to Asbury A. Adams, dated "Oxford, Ga., Oct. 9th, 1855," in which he said, "I was present when Luther and the old Dr. went to Brice's bed for the purpose, as I suppose, of ascertaining the manner in which he wished his property disposed

of." He admitted writing such a letter, and supposed it was of that date.

*Luther M. Smith,* the other witness, confirmed the others as to his capacity. Testator was highly excited religiously; he did not seem to be engaged about the disposition of his worldly goods; he thought and said he was dying ; Dr. Henry Gaither dictated the provisions of the will to witness, who wrote it. The day after the will was made, witness remembered that he was told to give one-half of the estate to the wife absolutely, and that he had forgotten to give her the half of the estate after her life estate. He called on Dr. Henry Gaither and told him of the mistake; he expressed a willingness to correct it, and said he would have it attended to ; witness called two or three times to have it done; it never was done. Testator asked his wife if she was willing to the will; she said she was satisfied with any arrangement he might make. He supposes testator was in a frame of mind which would admit of his attention to business, but not so likely to criticise the terms and provisions of a will as he would have been under other circumstances.

There was a mass of other testimony introduced on both sides, but as no question was made upon it, it is unnecessary to insert it.

The Court further charged the jury, that if Brice T. Gaither had testamentary capacity, and he signed the instrument as his will, and was not unduly influenced, and he signed it with a knowledge that that portion of his instructions that his wife should have one-half of his estate absolutely, at her death, was omitted, and he signed it with such knowledge, then it was his will, and you should so find. But should you believe from the evidence, that testator, at the time he signed said paper, believed that it contained that portion of his instructions, giving to his wife the one-half of his estate at her death, and that he signed it believing that it contained such provision for his wife, and that he would not have signed it if he had known that such provision was

omitted, then the instrument propounded is not his will, and you should so find.

To which charge counsel for respondents excepted, and assign the same as error.

The jury found that the paper propounded was not the will of Brice T. Gaither, and that the probate of the same be revoked.

And counsel for respondents tender their bill of exceptions, and assign as error the rulings, charges and refusals to charge above excepted to.

E. A. NESBIT; B. H. OVERBY; JNO. W. HUDSON; RICHARD F. DAVIS, for plaintiffs in error.

F. F. CONE; JUNIUS WINGFIELD; J. ADAMS, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was the first ground of the motion to dismiss the *rule nisi*, good?

Two reasons were urged in support of this ground.

1st. That Mrs. Gaither by qualifying as executrix and going on to execute the will *had admitted* the will to be the will of Brice T. Gaither, and therefore, that she was *estopped* from saying, that it was not his will.

2d. That Mrs. Gaither's application to set aside the judgment of probate, was equivalent to an application for leave to *renounce* her executorship; and, that having *intermeddled* as executrix, it could not be allowed to her, to renounce the executorship.

The first of these two reasons is true in point of fact. The only question on it, therefore is, was the admission *conclusive* on Mrs. Gaither?

There are decisions to the effect, that an admission is conclusive upon the person who makes it, if it has been *acted*

on by the party whom it concerns. Many of those decisions are referred to in 1 *Green. Ev.* § § 207, 208.

The parties whom this admission concerned, were the other legatees in the will; viz: the brothers and sisters of the testator.

But there is nothing in the evidence going to show, that these legatees by themselves or by a guardian, had acted upon this admission. There is nothing in the evidence going to show, that their situation was, in any respect, different from what it would have been, had Mrs. Gaither never qualified as executrix.

There are no *facts*, then, to bring the case within the principle of these decisions. And there is no decision to be found, I think, to the effect, that an admission that has not been acted on, is conclusive.

I must say too, that I am not prepared to give my assent to these decisions. They seem to me, to be calculated to overturn one of the fundamental principles of the common law—the principle, that no contract can bind that is without consideration; and, to be in conflict with another important principle of the common law—the principle, that estoppels, to bind either party, must bind both parties. See *Savage vs. Jackson*, 19 *Ga. R.* 305.

[1.] We think then that this admission was not *conclusive* upon Mrs. Gaither.

[2.] As to the second reason, we do not think it true, that Mrs. Gaither's motion to set aside the probate, was equivalent to an application for leave to renounce the executorship of the will. It is true that she asked, by her motion, to have the will declared null, but she did not intimate a wish to give up the office of executrix, in the event that the motion failed. By no means; there is no doubt, that in that case, she would have *insisted* upon retaining the office.

But if it were true, we are not prepared to say, that the Court of Ordinary has not the *power*, to accept the renunciation. The grant of power to that Court by the old Acts, is

very broad.  *Pr. Dig.* 239, 231.  And by a late Act, Courts
of Ordinary are declared to be, " Courts of general jurisdic-
tion as to testate and intestate estates."  *Acts of* 1855, '56,
147.

And it would seem, that the rule of the Ecclesiastical
Courts in England, on the subject, goes no further than this :
That an executor who had intermeddled, shall be allowed to
renounce, but that the renunciation shall not have the effect
to discharge him from liabilities which he incurred, whilst
acting as executor.  *Wms. Ex'rs,* 147.

Was the second ground of the motion to dismiss the rule,
good ?  In other words, was the executrix, Mrs. Gaither,
*estopped* by the *judgment* which admitted the will to pro-
bate ?  We think not.

[3.]  The judgment was a judgment, not *per testes,* and up-
on the citation of parties, but was a judgment in common
form.  It was a judgment, therefore, to which the other per-
sons interested in the will, viz : the brothers and sisters of
the testator, were not parties ; and therefore, was a judgment
which did not estop *them.*  They might still, for example,
have set up another will more favorable to themselves, if
they could have found such a one.

And that which is not an estoppel, to the party insisting
on it, as an estoppel, cannot be an estoppel to the other party.
Estoppel, to be good, must be " reciprocal."  2 *Coke Litt.*
352, *a.*

Is it true, that to entitle Mrs. Gaither to make a motion to
set aside the probate in this case, she had first, to " return, or
surrender, her legacy," received under the probate ?

[4.]  We think not.  That rule is for the benefit of the *exe-
cutor.*  It is said to be a rule designed to afford a guaranty
to the executor, of the sincerity of the legatee, or heir, who
moves ; and, to supply him with the certain means of paying
the costs, in the event that the motion fails.  *Bell vs. Arm-
strong,* 1 *Ecc'l. Reports,* 140.  But when, as here, it is the

Gaither et al. vs. Gaither.

executor himself, who moves, neither of these reasons can exist.

Besides, when it is the executor who moves, the rule from its nature, cannot apply; 1st, a man cannot surrender to himself; 2dly, it is absurd to compel a man to surrender to another, as to a receiver, merely in order to benefit the man himself.

Moreover, in the present case, if the will stands, *it* gives to Mrs. Gaither, an estate for her life, in the whole property, and therefore, gives to her the right to the *possession* of the whole, and it does not appear that there remain any debts; if the will fails, the *law* gives to her the entire interest in the whole property, and therefore gives to her, the right to the possession of the whole.   Either way, then, she is the person entitled to *possession.*   Why then should she be compelled to surrender the possession?

We think then, that the Court below was right in refusing to charge, on this point, what is was requested to charge, by the counsel for the plaintiffs in error.

The only remaining exception is one to the last charge of the Court.

The objection to that charge, presented to us is, that the charge lacks clearness, and was therefore, calculated to mislead or to confuse the jury.

We think it hardly probable, that the jury misunderstood or failed to understand this charge.   Therefore, we cannot sustain the exception.

Judgment affirmed.