### SILVEY & COMPANY v. CHAMBLEE.

The evidence plainly showing that the title to the property levied on was in the defendant in the execution (the husband of the claimant), and that she so recognized by taking a mortgage on the property from him to herself, a verdict in her favor was contrary to law and evidence. Though the mortgage may have been foreclosed without her knowledge or consent, it is not shown that the attorney who acted for her was not in fact her attorney.

December 20, 1890.

Claim. Title. Husband and wife. Attorney and client. Before Judge HUTCHINS. Gwinnett superior court. March adjourned term, 1890.

An execution in favor of John Silvey & Company, issued from a judgment of March 20, 1886, against T. C. Chamblee, was levied on 140 acres of land in Gwinnett county. Chamblee interposed a claim as agent for his wife. Upon the trial the execution was introduced, and the claimant admitted that the defendant was in possession at the date of the levy.

The claimant then introduced a warranty deed dated October 19, 1873, from certain persons stated in the record to be five brothers and sisters of defendant, to defendant, conveying to him the land levied upon, in consideration of $1,000. Also an item from the will of Hosea Camp, giving to his executors in trust for his daughter, Mrs. Horton, the mother of claimant, during the natural life of the mother and then to be divided among her children equally, 320 acres of land, including the land in dispute, all of which the testator esti-

mated to be worth $1,000 ; $500 of which he gave her and her children with property theretofore given to her, to make them equal with the rest of his children in property theretofore given them, and after accounting for the other $500 she was to receive an equal share in all his remaining property. Also two deeds from defendant to one Bagwell, one dated January 10, 1879, conveying thirty-one and three quarters acres of land; the other dated October 3, 1882, conveying thirty-three and three quarters acres. The testimony for the claimant tended to show the following : The defendant had been in possession of the lands levied upon since 1873. He had sold off to Bagwell the amount described in Bagwell's deeds. He had given in the remainder for taxes every year up to the year he failed in business, when he quit, and claimant began to give it in and has been giving it in since that time. He first began business in 1882 at Park's Mill, about one and a half miles from this land, and there contracted plaintiffs' debt. He paid cash for all he bought up to 1884. At no time while he was in business did he have any other lands except the land levied upon. He never told plaintiff of his wife's interest in or title to this land, nor in any way mentioned that his wife owned or had $600 interest in the land and he had only $400. The deed to him was made by agreement of all the heirs of the estate of his wife's mother, and signed by all present, except his wife who was not present. He sold off land to Bagwell and with the purchase money paid himself off for his interest in the land, and now has no interest in it. He borrowed money from his wife and owed her considerable in 1885. He gave her a mortgage on all his personal property to secure a note for $500 just before he was sued, and a mortgage upon the land levied on to secure a note for $900, these notes having been given for the money he had borrowed from her and for her in-

terest in the land. He has since paid the $500 note. The mortgage on realty has been foreclosed. He executed these notes and mortgages to her without telling her about them, when he found that he was. " broke," and without her knowing it. The mortgage was foreclosed by her attorney to secure her in case she should fail in her claim to the land levied upon, and she knew nothing of its foreclosure. He had bargained for and lived on the Park's Mill place when he commenced selling goods, and supposed plaintiffs thought he owned that place, which was worth about $3,000, but he never told them what land he owned; they never asked him. None of the plaintiffs were ever at his store while he sold goods. Exclusive of the land sold to Bagwell, there are about ninety-five acres of the land levied upon. Under the item of the will mentioned above, there were six shares. The other children of Mrs. Horton had received more money than claimant, so that her interest in the tract of land deeded to defendant was estimated at $600 and that of the other children who signed the deed at $400, which $400 defendant paid. While claimant was not present when the deed was signed, she knew of the arrangements, except that there was no agreement in her presence as to whom the deed should be made to. Since the deed was made to defendant he has controlled the land and had tenants on it, and claimant has lived on the land all her life, except about three years while defendant was selling goods at Park's Mill. She had no interest in her husband's business.

In rebuttal, the plaintiffs introduced a mortgage given by defendant to claimant January 5, 1885, upon the land levied on, to secure a note for $900, a petition to foreclose said mortgage and rule *nisi* issued thereon, and a rule absolute foreclosing the mortgage, dated September 14, 1887. Also a mortgage by defendant to claimant upon certain personalty, dated November 11, 1885, to secure promissory notes for $500.

The depositions of plaintiffs tended to show the following : The defendant came to their place of business and bought a bill of goods, stating that he owned from $400 to $600 worth of real estate; and they would not have sold him the goods if he had not represented himself as being perfectly solvent. These statements were made when he bought his first bill of goods, and occurred when he was in the mercantile business in Gwinnett county. He said he was not dependent upon his store for a living, but had a fine farm which supported him; and they believed the property in dispute was his and therefore gave him credit, and they thought from his statement that he was perfectly solvent and therefore they gave him credit. One of them went to his place of business twice to collect money he owed them, and this one never heard that the property levied upon belonged to any one else until it was levied upon. The first time he was at defendant's store, defendant told him the property was his, and the next time he saw defendant at his house, and defendant again told him it was his. At the second time the claimant was present passing in and out of the room. Plaintiffs would not have given defendant credit had they known his wife was setting up a claim to the property, or an interest in it. They believed defendant's statement that the property levied upon was his. One of plaintiffs testified that when the first goods were sold to defendant, he was not at Park's Mill.

The jury found for claimant "all the land, to wit, ninety-seven and a half acres not sold by T. C. Chamblee to G. L. Bagwell, not subject."

C. H. BRAND, for plaintiffs.

F. F. JUHAN, *contra.*

BLANDFORD, Justice.

A motion for a new trial was made in this case upon

the ground that the verdict was contrary to law and the evidence, which the court overruled, and the plaintiffs in error excepted. We are of the opinion that a new trial should have been granted upon the grounds stated in the motion. The evidence shows very plainly that the title to the property levied on was in the husband of the claimant (who is the defendant in error), that she recognized it by taking a mortgage to the property from her husband to herself, which was foreclosed; and although she alleges that this was done without her knowledge or consent, it is not shown that the attorney who acted for her was not in fact her attorney; so, therefore, what he knew the law charged her with knowing. We think the court did wrong to refuse to grant a new trial in this case, and the judgment is therefore                                    *Reversed.*