HARDEMAN, administratrix, *v.* ELLIS; *et vice versa.*

1. The court did not err in overruling the general demurrer to the first count of the petition.
2. The court did not err in overruling the general and special demurrers to the second count.
3. Nor did the court err in overruling the demurrer to the petition as amended.
4. The plaintiff in this case was estopped from maintaining his suit for specific performance of the contract alleged, in which he sought to have decreed in himself title to the entire property owned by his testatrix at the time of her death, and devised by her and given to the executor and other beneficiaries, on the ground that he had had the will probated and qualified as executor, and continued in the office of executor for two years, during which time he had discharged the duties of his office and had paid out large sums of money; this conduct being inconsistent with his claim of title to the entire estate of his testatrix.
5. Where application is made to perpetuate the testimony of a witness, under the provisions of the Civil Code, § 4560, and several parties are named in the application as the parties against whom the suit will be brought, but when the suit is actually brought only one of the parties named as being probably interested is made defendant, this will not afford ground to suppress the interrogatories. To make available the interrogatories taken in such a proceeding it is not necessary that the suit should be filed against all of the parties named in the application.
6. The ground of the motion to suppress the interrogatories, that parties named in the application for the order to perpetuate testimony were not served with notice or process before the order was granted, was properly overruled.

---

Appeal and Error, 4 C. J. p. 649, n. 36; p. 650, n. 37; p. 652, n. 55; p. 690, n. 84; p. 939, n. 22; p. 1051, n. 1.

Depositions, 18 C. J. p. 640, n. 56; p. 646, n. 84; p. 660, n. 69; p. 663, n. 23 New; p. 724, n. 50.

Election of Remedies, 20 C. J. p. 4, n. 10, 11, 12; p. 5, n. 34; p. 29, n. 73.

Estoppel, 21 C. J. p. 1204, n. 18; p. 1220, n. 4.

Landlord and Tenant, 35 C. J. p. 1239, n. 30.

Specific Performances, 36 Cyc. p. 551, n. 64; p. 736, n. 52; p. 773, n. 52; p. 784, n. 14 New; p. 788, n. 32; p. 795, n. 74.

Statutes, 36 Cyc. p. 1078, n. 43; p. 1166, n. 90.

Trial, 38 Cyc. p. 1598, n. 22, 24; p. 1602, n. 58; p. 1627, n. 82; p. 1632, n. 10; p. 1653, n. 11 New; p. 1707, n. 98; p. 1778, n. 73; p. 1779, n. 75, 76.

Trusts, 39 Cyc. p. 226, n. 98.

Witnesses, 40 Cyc. p. 2303, n. 23; p. 2304, n. 25.

7. The ground of the motion to suppress, etc., based upon the contention that the notice required under the provisions of the statute contained in section 4560 of the Civil Code was not given to the opposite party, was properly overruled.

8. The fact that the order of the court granted upon the application to take testimony, etc., after naming the commissioner, a disinterested attorney of the court, did not state his residence, is not ground for objection to the interrogatories.

9. The contention that the publication of the notice as it appeared in the newspaper in which it was published is insufficient in law, in that it does not state where Robert L. Anderson, the commissioner, resides, and does not state the court wherein the application was filed, nor the court wherein the contemplated suit is thereafter to be filed, is not meritorious, in view of the fact that the notice as granted and published is signed, "C. R. Wright, Deputy Clerk, Superior Court, Bibb Co."

10. In ground 22 of the motion to suppress it is alleged that the application and order were not entered on the minutes before delivery to the commissioner. In the absence of proof to support this allegation, the court did not err in overruling this ground. Besides, it would seem that the failure to enter the application and order on the minutes was a mere irregularity, which would not vitiate the order nor afford ground to suppress the interrogatories.

11. The ground of the motion to suppress, based upon the contention that at the time of filing the application to perpetuate testimony the applicant had the right to commence a suit which would have determined all his rights as claimed in the present suit, was properly overruled.

12. Section 4560 of the Civil Code is not in violation of the due-process clause of the State and Federal constitutions, upon any of the grounds urged in the motion to suppress the interrogatories in this case.

13. The verdict in this case should not be set aside because there is no evidence to show the value of the property or the value and extent of the services involved in the contract under consideration.

14. What is said in the next preceding note rules on the question made by the assignment of error in ground 14 of the motion for new trial.

15. The rulings already made and what is said in other parts of the opinion dispose, in effect, of the contentions made in grounds 7 and 8 of the motion for new trial, that there was no valuable consideration shown. The substance of these two grounds were, in effect, disposed of in the rulings upon the demurrers.

16. Ground 10 of the motion for new trial is disposed of in the various rulings upon the exceptions to the judgment of the court overruling the motion to suppress the interrogatories of Ellen W. Bellamy.

17. The court charged the jury as follows: "Now, if the plaintiff establishes his contentions with that degree of certainty required by the law, then he has carried the burden of proof, and he would be entitled to a verdict at your hands." This charge is excepted to upon the ground that it was "a virtual instruction to the jury that if the plaintiff by his own evidence and that of his witnesses prima facie established his contentions, he would be entitled to a verdict, notwithstanding any proof that might be submitted by the movant." The charge complained of is not open to this objection, and its correctness is not challenged upon any other ground.

18. The charge complained of in the 12th ground of the motion for new trial is not erroneous for any of the reasons assigned.

19. The court did not err in giving the following charge to the jury: "And they [the plaintiff] contend that William Lee Jr., the plaintiff in the case, complied with every part of that contract, did relinquish the Baltimore position, did remain with his aunt from that time up to the time of her death, and performed all the duties and services and rendered all the affection that was contemplated under the last-mentioned contract."

20. Error is assigned upon the following charge of the court: "If William Lee Ellis Jr. was placed under the control of William Lee Ellis Sr. and his wife, and if he didn't live with them all the time, that fact of itself would not prevent a recovery in this case on the first count, if his failure to live with them all the time was no fault of his, but was due to their direction or permission in their control over him." Inasmuch as the jury found for the plaintiff only upon the second count, it is not necessary to consider the effect of this charge, which related entirely to the plaintiff's right to recover on the first count.

21. In numerous grounds of the motion for new trial complaint is made of various portions of the court's charge, in which the court dealt with the contentions of the defendant that there was a rescission or abandonment of the contract by agreement between the parties, or by an agreement between the plaintiff and the plaintiff's aunt, and with certain alleged acts of the plaintiff which the defendant insists amounted to a breach or abandonment of the contract; and in view of which, as the defendant contends, the plaintiff would not be entitled to recover even if the contract was proved. After a careful examination of the instructions complained of in those parts of the charge, the court is of the opinion that they correctly stated the law applicable to these questions. Nor do we find that in these excerpts from the charge last referred to there was any expression or intimation of opinion by the court as to what had been proved, in violation of the statute inhibiting an expression of opinion upon the facts by the court.

22. The charge complained of in the 18th ground of the motion for new trial was not erroneous for any reason urged, but seems to have properly submitted certain of the issues involved in the case.

23. Error is assigned upon the following charge of the court: "Now, if that contract be established as required by law, and there has been full and substantial performance of the contract, the will would not have anything to do with the specific performance of those contracts; the contract would have been made in the lifetime of Mrs. Gazalene Ellis and would be superior to her will, and the will would have nothing to do with the property." This charge should be read in connection with the portion of the instructions almost immediately following, viz.: "I don't mean to say you should just eliminate the will from the evidence in the case; the will is one fact and circumstance in the case, which you should consider just as you consider any other circumstance in the case, as throwing light upon the question whether or not the contracts contended for in this case were made; but if these contracts were made and were performed, the plaintiff would recover regardless of the will." When considered together, neither of these charges was error. In view of what

is said above, the portion of the charge excepted to in ground 22 of the motion for new trial was not error.

24. The court charged the jury as follows: "The defendant, on the other hand, contends that the plaintiff has not shown either one of the contracts sued on in this case, and especially that those alleged contracts have not been proved with that clearness and strength and definiteness which would enable you to reach that degree of certainty as to their existence which is required by law. That is purely a question of law. If they have not; if he is right in that contention, then the plaintiff can't recover." This is excepted to upon the ground that it does not fully state the contentions of the defendant. This is not a good ground of exception to the charge. The fact that in one particular part of the charge the court did not state fully the contentions of the defendant is not a ground for holding that part of the charge error, if in itself it states a correct proposition of law and is applicable to the issues of the case. It is to be assumed that elsewhere in the charge the court stated with sufficient fullness the contentions of the movant.

25. Referring to certain alleged statements made by the uncle and aunt of the plaintiff, to the effect that plaintiff would, at the death of one or both of them, take all of the property of both, made in declarations of an intention to give to the plaintiff the property of the uncle and aunt, the court charged as follows: "These statements by themselves can not establish the contract contended for by the plaintiff. They are admitted for your consideration, however, along with all the other facts, to show whether or not the contract contended for and relied on by the plaintiff has been established. If they stood by themselves, they would amount to nothing at all." The charge quoted is essentially correct. If that part of the charge which stated to the jury that "If they [referring to the statements or declarations indicated] stood by themselves, they would amount to nothing at all," is too positive and should have been qualified, the omission of the qualification is not error as against the movant.

26. The refusal of a request to charge will not be held to be error, where the request itself is not perfect and in part is erroneous or calculated to mislead the jury. And in view of this, the court did not err in refusing the request set forth in ground 32 of the motion for new trial.

27. This being a suit for specific performance of a contract between a nephew and his uncle, under the terms of which the property accumulated by the uncle and transferred to the uncle's wife should become the property of the nephew after the death of the uncle and his wife, the nephew, the plaintiff in the suit for specific performance, was an incompetent witness as to transactions and communications had with the uncle which tended to uphold the contract sued upon, the suit referred to having been brought by the nephew against the administrator cum testamento annexo of the aunt referred to, who survived her husband, and who at her death left a will devising and bequeathing the property to other persons than the nephew.

28. The court erred in that portion of his instructions complained of in the 25th ground of the motion for new trial, in using language which too greatly limited and restricted the jury in the application to material issues in the case of certain facts and circumstances referred to in that charge.

29. As the case is to be tried again, no opinion is expressed as to the sufficiency of the evidence to support the verdict.

30. That part of the decree of the trial court which is excepted to in the cross-bill of exceptions appears to have been rendered in the exercise of a sound discretion, and the judgment of the court below upon that question will not be disturbed.

       Nos. 5048, 5052.   SEPTEMBER 18, 1926.   REHEARING DENIED

SEPTEMBER 30, 1926.

Equitable petition. Before Judge Malcolm D. Jones. Bibb superior court. July 27, 1925.

On October 14, 1924, William Lee Ellis Jr. brought a suit for specific performance, and other relief, against Mrs. Gazalene M. Hardeman, as administratrix cum testamento annexo of Mrs. Gazalene Ellis. The petition was in two counts, and set forth in substance the following alleged causes of action: In the first count it is alleged that the petitioner was born on August 11, 1870. His father was Hayne Ellis, and his mother Ida Lamar Ellis. Ellis's father was a brother of William Lee Ellis Sr.; his mother was a sister of Mrs. Gazalene Ellis, who was the wife of William Lee Ellis Sr. "William Lee Ellis Sr. and his wife had no children. At the time of petitioner's birth, or very soon thereafter, the said William Lee Ellis Sr. and his wife, desiring to take petitioner and adopt him as their child, made a contract with petitioner's parents, by the terms of which petitioner's parents on the one hand agreed to surrender their parental rights in petitioner and to deliver petitioner into the custody and control of the said William Lee Ellis Sr. and his wife, and by the terms of which the said William Lee Ellis Sr. and his wife agreed to take petitioner into their home, adopt him and rear him as their own child, and leave to him all the property which they might own at the time of their respective deaths, he to come into possession of said property at the death of the survivor of them." In pursuance of the contract, plaintiff's parents surrendered him, together with all their rights respecting him, to his uncle and aunt, and fully complied with the contract. In compliance with the contract, the uncle and aunt took petitioner into their home as their child, had him christened at a church of their choice, which was of a different denomination from that of petitioner's parents, and named petitioner William Lee Ellis Jr., for his foster father. Petitioner's foster parent did not legally adopt petitioner according to the statutory requirements,

but did rear petitioner as their son, regarded and treated him as their son, and held him out to the world as their adopted son, to whom they had agreed to leave all their property. Petitioner from his earliest recollection regarded the said William Lee Ellis Sr. and his wife as his parents, demeaned himself as their son, and accorded to them the affection and obedience due from a child to its parents. Petitioner, from the time he was taken into their home, occupied the position of a child, and remained with them as their son from that time continuously until the death of William Lee Ellis Sr., on May 27, 1902; and after his death, petitioner continued to live with his foster mother as her son until her death on June 27, 1922. Petitioner had business offers which would have carried him away from Macon, Georgia, where he and his foster parents lived, but at their request petitioner gave up said business opportunities and remained with his foster parents as long as they lived. Petitioner's aunt, Mrs. Gazalene Ellis, had no property at the time of her marriage, and never subsequently acquired any property with her own means. Her husband acquired all the property and had title in her name, which policy he followed in compliance with said contract. The uncle died on May 27, 1902, leaving the aunt as sole heir; and no administration was ever had upon his estate. The aunt, Mrs. Gazalene Ellis, died on June 27, 1922, without carrying out her part of the contract by leaving to petitioner by deed or will all the property owned by her at the time of her death. On the contrary she left what purports to be her last will disposing of her estate to other persons in large part.

In the second count it is alleged that the uncle and aunt of petitioner agreed with his parents, at or very soon after his birth, that if the parents would surrender their parental rights and control of petitioner, they would adopt him as their son and rear him as their own child. The uncle and aunt took petitioner into their home, christened him in their church, one different from that of petitioner's parents, named him William Lee Ellis Jr., for his foster father, and reared and regarded him as their own, though they failed to legally adopt him. It is further alleged: "Petitioner from his earliest recollection regarded the said William Lee Ellis Sr. and his wife as his parents, demeaned himself as their son, and accorded to them the affection and obedience of a child to its

parents. Petitioner, from the time he was taken into their home, occupied the status of a child and remained with them as their son from that time continuously until the death of William Lee Ellis Sr. on May 27, 1902, and after his death remained with his foster mother, Mrs. Gazalene Ellis, as her son until her death on June 27, 1922. . . A short time before the death of William Lee Ellis Sr., petitioner was offered a business opportunity in the City of Baltimore, Maryland, which he agreed to accept. Petitioner's foster parents, however, upon learning of his contemplated removal from Macon, insisted upon petitioner's rejecting the offer; and one night at their home they had a long conference with petitioner about the matter. William Lee Ellis Sr. on that occasion said he was getting old and feeble; that his doctor had told him he could not live much longer; that he was then upon the point of going to Savannah, Georgia, for rest and treatment, and might not ever be able to return alive; that he desired petitioner to give up the idea of leaving Macon, and to remain with his foster mother as long as she lived; and that if he would do so, all the property owned by them would, at his wife's death, be left to petitioner, and it would therefore not be necessary for petitioner to go away to try to make money, because their property would be sufficient for him. Petitioner's foster mother on said occasion told petitioner that she wanted him to stay with her until her death, and agreed with petitioner that if he would not go away from Macon to live, and would remain at home with her as long as she lived, she would at her death leave to petitioner all her property. Petitioner thereupon agreed, in consideration of the promises herein set forth, to give up said business opportunity at Baltimore and to remain at Macon with his said foster parents. Petitioner's foster father did go to Savannah, and died there. Petitioner, in pursuance of the contract with his foster mother, gave up the business in Baltimore, and remained with her as her son until her death." Petitioner's foster mother died without complying with the said contract. On the contrary she left a will disposing of her property largely to others.

By amendment the plaintiff presented a detailed schedule of certain properties embraced in the suit, and asked a decree for all other property owned by the aunt at the time of her death. The defendant filed general and special demurrers, which were over-

ruled. Exceptions pendente lite were duly taken; so that the correctness of these rulings are in the bill of exceptions called into question.

Upon the call of the case for trial, and before it was submitted to a jury, the defendant presented in writing her motion to suppress the interrogatories and the answers thereto of Ellen W. Bellamy, a witness for the plaintiff. These interrogatories were sworn out by the plaintiff, under section 4560 of the Civil Code, to perpetuate the testimony of the witness named. The application to perpetuate the testimony is as follows:

"Georgia, Bibb County. To Honorable H. A. Mathews or Honorable Malcolm D. Jones, judges of the superior court of said county: The application of William Lee Ellis Jr., to perpetuate the testimony of Mrs. E. W. Bellamy, respectfully shows: 1. Mrs. E. W. Bellamy resides in said State and county, and is now in said county. 2. It is the intention of applicant to institute in the superior court of said county a suit against the administrator with the will annexed of Mrs. Gazalene Ellis and the legatees and devisees under her will, to recover the property which belonged to the said Mrs. Ellis before her death; said suit to be in two counts, one count on a contract made by Mrs. Ellis and her husband with the parents of applicant, for applicant's benefit, under which Mrs. Ellis and her husband agreed to take and rear applicant as their own child and leave him all their property at their death, and the other count on a contract made by Mrs. Ellis and her husband with the applicant, in which they agreed that if applicant would remain with her until her death they would leave him all of their property at her death, both of said contracts having been fully performed on applicant's part. 3. The proof expected to be obtained from said witness is that Mrs. Ellis and her husband did take applicant when he was a child and rear him; that applicant did remain with Mrs. Ellis until her death; and that both Mrs. Ellis and her husband told the witness that both of said contracts had been made. 4. Applicant was formerly the executor under said will, but has resigned as such executor, naming Mrs. Gazalene M. Hardeman as a person qualified and willing to accept the trust. Applicant can not now commence said suit, for the reason that the administrator with the will annexed has not yet been appointed. 5. The parties interested on

the other side of said suit are as follows: Mrs. Gazalene M. Harde-
man as administratrix with the will annexed of Mrs. Gazalene
Ellis." Then follows a statement of numerous other parties prob-
ably interested, certain of them residents and others non-residents;
certain of them being also minors. The interrogatories to be pro-
pounded to the witness are attached to the application, and the
application concluded with a prayer that an order be passed requir-
ing some disinterested attorney of the court to act as commissioner
and take the testimony, and was signed by counsel for applicant.
The court thereupon passed the following order:

"Upon reading and considering the foregoing application it is
ordered that Robt. L. Anderson, a disinterested attorney of the
court, act as commissioner and take the testimony of the witness,
Mrs. E. W. Bellamy, as prayed in said application, on Wednesday,
July 23, 1924. It is further ordered that notice of intention to
take said testimony be served upon Mrs. Gazalene M. Hardeman,
and that such notice be published in the Macon Telegraph one time
on the 19th day of July, 1924. It is further ordered that if any
interested party desires to propound cross-interrogatories, he file
such cross-interrogatories with said commissioner by the time des-
ignated in this order for the taking of said testimony. This 18th
day of July, 1924. [Signed] Malcolm D. Jones, J. S. C. M. C."
This was followed by a notice signed by the deputy clerk of the
superior court of Bibb County, in the following language: "To
the heirs at law and the legatees and devisees of Mrs. Gazalene
Ellis: You are hereby notified, that, upon application of Will-
iam Lee Ellis Jr., Robt. L. Anderson has been designated as com-
missioner to take testimony of Mrs. E. W. Bellamy, to be used in
a suit hereafter to be filed by applicant against the personal repre-
sentative and the heir at law and the legatees and devisees under
will of said Mrs. Ellis. If you desire to propound any cross-inter-
rogatories, you are notified to place said cross-interrogatories in
the hands of said commissioner on or before Tuesday, July 22,
1924." Due and legal service of the foregoing petition and order
was acknowledged by the attorney for Mrs. Gazalene M. Harde-
man, the defendant, on July 18, 1924, and "all other and further
service and copy waived."

The exceptions to the interrogatories and the motion to suppress
the same were upon the following grounds:

" (1)   Because in said petition it is made to appear that 'it is the intention of the applicant to institute in the superior court of said county a suit against the administratrix with the will annexed of Mrs. Gazalene Ellis and the legatees and devisees under her will, to recover the property which belonged to the said Mrs. Ellis before her death.' Whereas, in this case, the applicant, William Lee Ellis Jr., has brought his suit against this defendant alone, and in said suit he has failed to join with this defendant, as codefendants, any of the legatees and devisees under the will of the said Mrs. Ellis, all of said legatees and devisees under said will being, in his petition to perpetuate the testimony of the said Ellen W. Bellamy, named by the applicant as 'parties probably interested on the other side of said suit.'

" (2)   Because this present action is a bill in equity proceeding in the name of William Lee Ellis Jr. against this defendant alone, and in which said action none of the legatees or the devisees under the will of the said Mrs. Ellis are parties.

" (3)   Because the said interrogatories of the said Ellen W. Bellamy, and the answers thereto, can only be used in a case proceeding in the name of William Lee Ellis Jr. against this defendant and the legatees and the devisees under the will of the said Mrs. Ellis.

" (4)   Because the interrogatories of the said Ellen W. Bellamy, and the answers thereto, can not be used in this present case, for the reason that the legatees and the devisees under the will of the said Mrs. Ellis are not parties to this said cause.

" (5)   Because in the petition to perpetuate the testimony of the witness it does not appear that said proceeding was 'in anticipation of litigation not yet pending, and which it is not in his power to commence,' all of which is necessary before the testimony of the witness can be perpetuated for use in this cause.

" (6)   Because the applicant in his petition shows that on July 18, 1924, the date upon which said application was presented to the court, and the date upon which the order was had thereon, it was, at that time, within the power of the applicant to commence a suit against all proper and necessary parties, in which said suit all the rights of the applicant, both legal and equitable, as disclosed by his said application, could have been fully and amply protected.

" (7)   Because on July 18, 1924, the date upon which said ap-

43

plication was presented to the court, and the date upon which the order was had thereon, the applicant was, at that time, in a position to assert, by proper legal proceedings, against all necessary and proper parties, his right of title to the property which in this cause he is seeking to recover from this defendant.

"(8)  Because on July 18, 1924, the date upon which said application was presented to the court, and the date upon which said order was had thereon, it was possible for the applicant, at that time, to make the matter in controversy, as shown by his said application, and as set forth by the allegations of his bill as filed in this case, the subject-matter of immediate judicial investigation against all necessary and proper parties, in which said judicial investigation petitioner's right of title to the property in question, and every right of petitioner as disclosed by his petition filed in this cause, could have been forever and finally determined as against this defendant, and as against all other necessary and proper parties.

"(9)  Because the applicant in his said petition to perpetuate the testimony of the said Ellen W. Bellamy has failed to show that the facts about which the testimony of the witness relates could not at the time of the filing of his said application have been immediately and judicially determined in a court of law or equity.

"(10)  Because it appears from said application to perpetuate the testimony of the said Ellen W. Bellamy, and from the order had thereon, that neither this defendant, nor any other person or party interested on the other side to the applicant, was ever served with proper legal notice of said application; that they have never had their day in court upon said application; that no opportunity has ever been given them to answer said application, or to demur to the same, or to show cause, if any they had, why said application should not have been granted as prayed therein.

"(11)  Because it appears from said application, and from the order had thereon, that said application was presented to the court, and the order had thereon, without notice to or service on this defendant, and without notice to and service on any other party interested on the other side to the applicant; by reason of which facts the court was without jurisdiction to entertain said application, and without jurisdiction to pass the order of July 18, 1924.

"(12)  Because the commission as issued to Robert L. Ander-

son, the commissioner, to examine the said Ellen W. Bellamy, as appears from said application, was issued to the said Robert L. Anderson before the applicant, William Lee Ellis Jr., had given this defendant, or had given to any other party interested on the other side to the applicant, five days notice of said application, or had served this defendant, or any other party interested on the other side to the applicant, with a copy of the interrogatories filed with said application in the office of the clerk of this court.

" (13)   Because in said application to perpetuate the testimony of the said Ellen W. Bellamy there was no prayer for process of subpœna; and because no process of the court was ever issued upon said application, or was ever served upon this defendant, or upon any other party interested on the other side to the applicant; by reason of which facts the court was without jurisdiction in said cause, and was without jurisdiction to pass the order of July 18, 1924, and, in said cause, never acquired jurisdiction over this defendant, or over any other party named in said application as being interested on the other side to the applicant.

" (14)   Because section 4560 of the Code of the State of Georgia, and under which said code section the applicant in this proceeding is proceeding to perpetuate the testimony of the said Ellen W. Bellamy, which said code section is as follows, to wit: 'If any person desires to perpetuate the testimony of a witness, in anticipation of litigation not yet pending, and which it is not in his power to commence, he may make written application to the judge of the superior court of the county where the witness resides, or, if a non-resident, where he may be temporarily, stating the facts, the proof expected, and the parties probably interested on the other side, accompanying such application with the written interrogatories to be propounded to the witness; whereupon the judge shall pass an order requiring some disinterested attorney of the court to act as commissioner and take such testimony, providing in such order for the most effectual notice to the opposite parties, and for any cross-interrogatories which may be filed,' is unconstitutional and void, and is in violation of article 1, section 1, paragraph 3, of the constitution of the State of Georgia, which provides as follows: 'No person shall be deprived of life, liberty, or property, except by due process of law;' for the reason that all proceedings under said code section, specified as necessary to be had in per-

petuating testimony, are entirely ex parte; said code section nowhere provides for notice of any kind upon parties probably interested on the other side to that of the applicant, so that said parties might show cause, if any they had, why the prayers of the application should not be denied. Under said code section interested parties have no voice in said application; no service or notice of any kind is provided in said code section upon parties probably interested on the other side to that of the applicant; no voice is given to such interested parties in the naming of the commissioner; no opportunity is presented to such interested parties to plead to the application, which application is the foundation of the proceeding. All of which is without due process of law; is void, and is in violation of the fourteenth amendment of the constitution of the United States, and is in violation of the law of the land.

" (16) Because, before the testimony of the said Ellen W. Bellamy could be perpetuated under said petition and the order had thereon, for use in this cause, each and every of the parties probably interested on the other side, and as set forth in paragraph 5 of said petition, must have received notice of the said petition and order; whereas the said opposite parties, as disclosed in said petition, have never received a proper and legal notice of said petition and order.

" (17) Because the only notice provided in the order of July 18, 1924, was by publication in the Macon Telegraph one time, on July 19, 1924; and the publication of the notice as it appears in the Macon Telegraph on said date is insufficient in law, in that it does not state where Robert L. Anderson, the commissioner, resides; it does not state the court wherein the application of the said William Lee Ellis was filed, nor the court wherein his said contemplated suit is hereafter to be filed, and it does not follow the order of the court upon which it is predicated, all of which is contrary to law and is no notice to the opposite parties as disclosed by paragraph 5 of said application.

" (18) Because each and every of the parties probably interested on the other side, and as set forth in paragraph 5 of said application, must have received notice as provided in the order of the court, dated July 18, 1924, before the testimony of the witness Ellen W. Bellamy could be perpetuated for use by the applicant in

this cause; whereas such opposite parties have never received any legal notice of said petition and of said order.

"(19)   Because section 4560 of the Code of Georgia, and under which said section this application to perpetuate the testimony of the said Ellen W. Bellamy is proceeding, specifically provides therein for notice to the opposite parties to the applicant.   Paragraph 5 of the application names each and every of such opposite parties, but nowhere and in no manner has any proper and legal notice been given and served upon such opposite parties.

"(20)   Because the attempted notice given by publication in the Macon Telegraph one time, on July 19, 1924, is not a proper and legal notice as is required under said code section 4560, and under the order of the court, dated July 18, 1924.

"(21)   Because the order of July 18, 1924, upon said application of William Lee Ellis Jr. to perpetuate the testimony of Ellen W. Bellamy, provided, among other things, that notice be served upon Mrs. Gazalene M. Hardeman, and that such notice as was served upon the said Mrs. Hardeman be published in the Macon Telegraph one time, on July 19, 1924; whereas, this defendant shows the following to be the notice attached to the petition and order as served upon the said Mrs. G. M. Hardeman: 'To the heirs at law and the legatees and devisees of Mrs. Gazalene Ellis: You are hereby notified that upon application of William Lee Ellis Jr., Robt. L. Anderson has been designated as commissioner to take testimony of Mrs. E. W. Bellamy, to be used in a suit hereafter to be filed by applicant against the personal representative and the heirs at law and the legatees and devisees under will of said Mrs. Ellis.   If you desire to propound any cross-interrogatories, you are notified to place said cross-interrogatories in the hands of said commissioner on or before Tuesday, July 22, 1924. C. R. Wright, Deputy Clerk, Superior Court, Bibb County, Georgia.'

"And this defendant shows the following to be the notice as published, one time, in the Macon Telegraph, on July 19, 1924: 'Notice.   To heirs at law and legatees and devisees of Mrs. Gazalene Ellis:   You are notified that R. L. Anderson has been designated commissioner to take testimony of Mrs. E. W. Bellamy, for use in suit to be filed by William Lee Ellis Jr. against the personal representative, heirs, and legatees and devisees of Mrs,

Ellis. If you desire to propound cross-interrogatories, you are notified to place them in hands of said, commissioner by July, 1924. C. R. Wright, Deputy Clerk, Superior Court, Bibb County, Georgia.'

"This defendant shows the notice attached to the petition and order served upon the said Mrs. G. M. Hardeman is not the same notice as that published, one time, in the Macon Telegraph on July 19, 1924, and that this said notice so published is not such notice as was attached to the petition and order served upon the said Mrs. G. M. Hardeman. This defendant shows the notice attached to the petition and order served upon the said Mrs. G. M. Hardeman does not conform to the order of July 18, 1924, and is not a legal and proper notice under said order, in that said order of July 18, 1924, provides that any interested party desiring to propound cross-interrogatories shall file such cross-interrogatories with said commissioner by the time designated in said order for the taking of said testimony, to wit, the 23rd day of July, 1924, whereas the notice attached to the petition and order served upon Mrs. G. M. Hardeman provides that any interested party desiring to propound cross-interrogatories place the same in the hands of said commissioner on or before Tuesday, July 22, 1924. This defendant shows that the notice published, one time, in the Macon Telegraph on July 19, 1924, does not conform to the order of July 18, 1924, and is not a legal and proper notice under said order of July 18, 1924, in that said order provides that any interested party desiring to propound cross-interrogatories shall file such cross-interrogatories with said commissioner by the time designated in said order for the taking of said testimony, to wit, the 23rd day of July, 1924; whereas the notice as published provides that any interested party desiring to propound cross-interrogatories shall place them in the hands of said commissioner by July, 1924.

"(22) Because the application for the order as presented by William Lee Ellis Jr. to the judge of this court on July 18, 1924, and the order had upon such application, for the perpetuation of the testimony of the witness Ellen W. Bellamy, were not entered on the minutes of this court before said application and order were delivered to the commissioner, Robt. L. Anderson, for execution.

" (23)   Because on July 18, 1924, the date upon which said application was presented to the court, and the date upon which the order was had thereon, it was, at that time, within the power of the applicant to commence a suit against the devisees and the legatees, as set forth in paragraph 5 of his application, in which said suit all the rights of the applicant, both legal and equitable, as disclosed by his application, and as disclosed by the bill filed against this defendant in this cause, could have been fully and finally determined against said devisees and legatees.

" (24)   Because on July 18, 1924, the date upon which said application was presented to the court, and the date upon which the order was had thereon, it was, at that time, within the power of the applicant to commence a suit against himself as executor and against the devisees and legatees, as set forth in paragraph 5 of his application, in which said suit all the rights of the applicant, both legal and equitable, as disclosed by his application, and as set forth by the bill filed against .this defendant in this cause, could have been fully and finally determined against the estate of Mrs. Gazalene Ellis, and against said devisees and legatees."

The defendant filed an answer denying the allegations of the making of the agreements, of the performance of any contract which might have been made, and that the plaintiff was entitled to any of the relief sought.   Upon the trial the jury returned the following verdict: "We, the jury, find for the plaintiff on the second count."   The defendant filed a motion for new trial, which was overruled, and she excepted.

*Charles H. Hall* and *Hall, Grice & Bloch,* for plaintiff in error in main bill of exceptions.

*Strozier & Deaver* and *Ben J. Fowler,* contra.

HINES, J.   (After stating the foregoing facts.)

1.   The defendant demurred generally and specially to the petition.  ' The general demurrer to the first count was as follows: " (1) No cause of action is set forth in said petition against this defendant.   (2) No judgment for specific performance, as against this defendant, can be had under the allegations of said petition. (3) No property of any kind or character is shown to be in the custody or control of this defendant, nor is Mary Gazalene Lamar Ellis shown, at her death, to own or possess any property of any kind or character, about or upon which a judgment for specific per-

formance can be based. (4) No bill of particulars is set forth in said petition, showing what property, if any, is in the custody or control of this defendant, and for which specific performance is prayed:" The third and fourth grounds of this demurrer were sufficiently met by amendment; and as to the first and second grounds, they are covered by cases based upon causes of action very similar to that presented in the petition in this case. In *Landrum* v. *Rivers,* 148 *Ga.* 774 (98 S. E. 477), it was said: "The plaintiff in error submitted a large number of written requests to charge, which the court refused to give, and error is assigned upon the refusal to give in charge these requests. Among them was the following: 'It is not every parol contract which the court will specifically enforce. It will never enforce any parol contract for the sale of land or the making of a will or the testamentary disposition of property, unless the party who is seeking such performance will be defrauded if the contract is not enforced, even if all other elements are shown to exist which would entitle a party to such relief.' The court did not err in refusing to give this charge. This charge is not in harmony with the doctrine laid down in other cases decided by this court, that a contract to make a will will be specifically performed, where the evidence establishes the contract with the requisite degree of certainty, . . and it is shown by the evidence that the party claiming the right to specific performance fulfilled and performed his part of the contract." See, in this connection, *Banks* v. *Howard,* 117 *Ga.* 94 (43 S. E. 438). In the case of *Gordon* v. *Spellman,* 145 *Ga.* 682 (89 S. E. 749, Ann. Cas. 1918A, 852), the court held such a contract to be valid and enforceable; and further held: "If the promisor in such a case makes a will, which is probated, devising the specific property to another person in violation of the terms of the contract, equity will impress a trust upon the property, which will follow it into the hands of the personal representative or devisee of the promisor." See also *Bird* v. *Trapnell,* 147 *Ga.* 50 (92 S. E. 872). In 28 R. C. L. 64, it is said: "A person may make a valid agreement binding himself legally to make a particular disposition of his property by last will and testament, or not to alter a particular will already made. An agreement as to the making of a will may be to the effect that the promisee shall receive a child's portion, or a share as heir." See also the cases cited in the notes to this text,

among which are certain Georgia cases. In *Pair* v. *Pair,* 147 *Ga.* 754 (95 S. E. 295), it was said: "All our decisions are to the effect that the contract, whether one to adopt, with the resulting rights of an heir at law, or one to give the child a share in the estate of the adopting parent, is a contract which when performed by the child creates a status which a court of equity, in a proper proceeding brought by proper parties, has power to declare."

In the case of *Ansley* v. *Ansley,* 154 *Ga.* 357 (114 S. E. 182), it was said: "A parol obligation by a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted upon by all parties concerned for many years and during the obligor's life, may be enforced in equity upon the death of the obligor, by decreeing the child entitled as a child to the property of the obligor, undisposed of by will. Civil Code, § 3016; *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773) ; *Pair* v. *Pair,* 147 *Ga.* 754 (95 S. E. 295) ; *Richardson* v. *Cade,* 150 *Ga.* 535, 538 (104 S. E. 207). The rule above announced is applicable where a man and his wife contract jointly to adopt the child of another, and such a contract will bind both the husband and wife severally. Such agreement to adopt a child is, after death of the party who agreed to adopt, enforceable against the sole heir at law, by treating the heir as a trustee and compelling him to convey the property in accordance with the contract; and where the agreement is entire and embraces both real and personal property, and the estate of the decedent is unrepresented and owes no debts, and the heir is in possession of all of such property, it is not necessary, in order to enforce the contract in its entirety, to have an administrator for such estate appointed and made a party defendant to the suit. In such a case, equity, having obtained jurisdiction over the subject-matter and over the heir for the purpose of enforcing the contract as to the land against him, may enforce the whole of the contract against him. *Kent* v. *Davis,* 89 *Ga.* 151 (15 S. E. 457) ; *Belt* v. *Lazenby,* 126 *Ga.* 767 (5) (56 S. E. 81) ; *Gordon* v. *Spellman,* 148 *Ga.* 398 (96 S. E. 1006). If the sole heir be dead, such suit may be entertained against his administrator." And in *Belt* v. *Lazenby,* 126 *Ga.* 767 (5) (56 S. E. 81), it was said: "An agreement to devise, if founded upon sufficient consideration, is, after death of the party who agreed to devise, enforceable against his sole heir at

law, by treating the heir as a trustee and compelling him to convey the property in accordance with the contract; and where the agreement is entire and embraces both real and personal property, and the estate of the decedent is unrepresented and owes no debt, and the heir is in possession of all of such property, it is not necessary, in order to enforce the contract in its entirety, to have an administrator for such estate appointed and made a party defendant to the suit. In such a case, equity, having obtained jurisdiction over the subject-matter and over the heir for the purpose of enforcing the contract as to the land against him, may enforce the whole of the contract against him."

Under a contract like that set out in the petition in this case, equity will impress a trust upon the property, which will follow it into the hands of the promisor's personal representative or a sole heir, if in possession, or his heir's personal representative. These propositions are ruled in substance in one or more of the cases cited above. We do not deem it necessary to deal with the special demurrers to the first count of the petition, inasmuch as the finding for the defendant in error was upon the second count.

2, 3. Under decisions rendered by this court, certain of which are cited in dealing with the general demurrer to the first count, we are of the opinion that the general demurrer to the second count should also have been overruled. Nor do we think that the second count was open to demurrer upon the ground that it was multifarious and duplicitous, that it sets forth separate and distinct contracts which are sued upon. And while certain matters are set forth in the petition by way of inducement, and touching which evidence might have been introduced without pleading to that effect, nevertheless the refusal of the court to strike those parts is not such error as to require a reversal. Under the decisions which we have cited above, and similar decisions by this and other courts, the petition as amended was not open to the objections raised by demurrer.

4. In her answer the defendant, among other defenses, set up the following: "Defendant shows that Mary Gazalene Lamar Ellis died on June 27th, 1922, testate; that plaintiff, William Lee Ellis Jr., was named in the will of the said Mary Gazalene Lamar Ellis as her executor; that on July 3rd, 1922, plaintiff, the said William Lee Ellis Jr., filed in the court of ordinary of Bibb

County, Georgia, his petition offering the will of the said Mary Gazalene Lamar Ellis for probate in common form; that said will was probated in common form, and on August 7th, 1922, letters testamentary were issued to the said William Lee Ellis Jr., the plaintiff, who thereupon, immediately, took charge of said estate as executor; that the said William Lee Ellis Jr., as such executor, continued in charge of said trust from the 7th day of August, 1922, until the 14th day of October, 1924, upon which latter date he tendered his resignation as such executor to the ordinary, and upon this said date he resigned his trust, and this defendant was appointed as administratrix of said estate cum testamento annexo; that immediately thereafter, to wit, on the——day of October, the said William Lee Ellis Jr., in his individual capacity, filed this suit against this defendant, claiming the entire estate of the said Mary Gazalene Lamar Ellis, under a contract which he avers existed from the date of his birth or shortly thereafter, and to the exclusion of this defendant. Defendant shows that during the period from August 7th, 1922, when he qualified as executor of said estate, until October 14th, 1924, when he resigned his trust as such executor, the said William Lee Ellis Jr. actively performed duties as such executor, expending during this said period of time, as such executor, the sum of $9,226.17. This defendant says that by reason of the acts and doings of the said William Lee Ellis Jr., as in this paragraph set forth, he has by his solemn admission in judicio, in having himself named as executor of the said Mary Gazalene Lamar Ellis, and in acting as such executor as in this paragraph set forth, estopped himself from now, at this time, in this suit, undertaking to set up as against this defendant specific performance of the contract here sued on." To this portion of the answer plaintiff demurred. The court sustained the demurrer and struck this ground of defense. To this judgment the defendant excepted; and this presents for our consideration and decision the question whether the plaintiff was estopped from bringing the present suit, by reason of the facts set out in the portion of the answer thus stricken on demurrer.

Trustees and other representatives are estopped from setting up title adverse to their trust. Civil Code (1910), § 5739. Where a married woman applied to the court to have a man appointed trustee of certain slaves as her separate estate, and the court passed an

order appointing him, and he accepted the trust and took possession of the property, such trustee, when sued by the cestui que trust, was held estopped from denying the trust and setting up title in the woman's husband in order to escape accounting to her for certain of such slaves. *Duncan* v. *Bryan,* 11 *Ga.* 63. Where a guardian had been appointed for two orphan children, and had made and returned to the court of ordinary a schedule of their property, in which a certain slave was included as a part of their estate, and was hired out as their property, and annual returns thereof made to the court of ordinary for ten consecutive years by such guardian, it was held in a suit by one of the orphans, after her marriage, for her share of said slave and his hire, against such guardian, that he was estopped, on grounds of public policy and good faith, from denying the title of the orphans to the slave in question, and showing an independent title in himself anterior to his appointment as guardian. *Scott* v. *Haddock,* 11 *Ga.* 258. Where an executor got possession of property by virtue of his office, his possession was the possession of the estate, and title in the executor could not be set off against his successor, in a suit for the property. *Benjamin* v. *Gill,* 45 *Ga.* 110. Where a deed, prior to the married woman's act of 1866, was made to a husband as trustee for his wife, which contained no words creating a separate estate, but he accepted the office of trustee, received the property as trustee, and treated and acknowledged it to be trust property during his wife's life, it was held, in a suit by the wife against the legal representative of the husband after his death, for such property, that the husband and his representative were estopped from denying the title of the wife to such property. *Mounger* v. *Duke,* 53 *Ga.* 277; *Evans* v. *Bethune,* 99 *Ga.* 582 (27 S. E. 277). Where a father, after the death of his wife, was appointed, on his application, trustee to hold certain real estate in trust for his children, and accepted the trust, and continued to act as such trustee for several years, when he filed a bill setting up that this property was in fact his, this court held that if he knew the terms of the deed to the successor trustee, and accepted the trust knowing that the deed was to the children after the wife's death, he was estopped from setting up title in himself. *Allen* v. *Solomon,* 54 *Ga.* 483. A will devised land to certain children. Their father became executor and died. The mother and one of the children be-

came administrators de bonis non, with the will annexed, but were subsequently discharged and another appointed. The latter brought suit against the mother and the child, who were in possession, to recover this property. This court held that the mother and the child were estopped from denying the title of the testator or the title conveyed by the will. *Smith* v. *Sutton,* 74 *Ga.* 528.

Where one is in a situation in which he may elect between two inconsistent positions or proceedings, the choice of his position or proceeding must be made before bringing suit. He can not bring either action without selecting and determining to accept and occupy a position consistent with that action or position and inconsistent with the other. If with knowledge he chooses the position he will occupy, it would be trifling with the court to allow a change. Since the choice is made and one of the alternative positions or proceedings has been adopted, the act operates at once as a bar to the other and the bar is final and absolute. *Bacon* v. *Moody,* 117 *Ga.* 207' (43 S. E. 482) ; *Board of Education* v. *Day,* 128 *Ga.* 156 (57 S. E. 359) ; *Kennedy* v. *Manry,* 6 *Ga. App.* 816 (66 S. E. 29). The testatrix died on June 27, 1922. Plaintiff was named in her will as her executor. On July 3, 1922, plaintiff filed in the court of ordinary his petition offering the will for probate in common form. It was so probated on August 7, 1922. Plaintiff on the day of probate qualified as executor by taking the oath required of every executor (Civil Code (1910), § 3887), and letters testamentary were issued to him. As such executor he immediately took possession and charge of the estate of the testatrix. He continued in charge of the estate from August 7, 1922, to October 14, 1924. He actively performed the duties of such office, and during said period expended as such executor the sum of $9,226.17 of the assets of the testatrix. By probating the will of testatrix, which disposed of a large estate, and by qualifying as her executor to dispose of the same in accordance with her directions contained therein, plaintiff in effect represented to the court of ordinary that testatrix died seized and possessed of an estate which she had undertaken to dispose of by her will. By qualifying as her executor he became bound to administer her estate in conformity to directions given in her will. At the time he probated her will and qualified as her executor he was fully aware of his rights under the contracts with her and her husband which he

seeks to have specifically performed in the present proceeding. He was fully aware that if said contracts were in fact made and were specifically performed, the testatrix had no estate of which she could dispose by will. Under these circumstances the plaintiff was put to his election of rights, positions and proceedings. He had to make choice of rights, proceedings and positions. He had to choose between probating the will, accepting the office of executor, of executing the will and of accepting the benefits accruing to him under this instrument, and the rights accruing to him under the enforcement of said contracts. These positions were inconsistent. His election to proceed under the will concludes him from undertaking to have these contracts enforced. So we are of the opinion that the plaintiff, in determining to probate this will, in qualifying as executor and in executing the same in part, became estopped, "upon grounds of public policy and good faith," from asserting his rights under the contracts sought to be enforced in this case.

Able counsel for the plaintiff insist that the above facts could only be effective as an estoppel while the plaintiff kept possession of the estate as executor, and that they ceased to operate as an estoppel when he resigned and turned over the estate to his successor in the trust for administration. Undoubtedly a tenant can not dispute his landlord's title while in possession. Counsel analogize the position of an executor to that of a tenant. Civil Code (1910), § 3698. A tenant can buy title and assert it after surrendering possession. *Williams* v. *Garrison*, 29 *Ga.* 503. If after the expiration of his term, the tenant desires to contest the title of his landlord, he must surrender the possession acquired from his landlord. *Grizzard* v. *Roberts*, 110 *Ga.* 41 (2) (35 S. E. 291). The same principle is applicable to possession by license or purchase. *Watlers* v. *Hertz*, 135 *Ga.* 804 (70 S. E. 338). It is undoubtedly true that a trustee is estopped from denying the title of the person for whose use he holds. *Smith* v. *Sutton*, 74 *Ga.* 528(2). Where the estoppel rests solely upon the fact of possession of the trustee, it may be that it would cease to operate where the trustee surrendered to his cestui que trust the possession of the property involved; but the estoppel asserted in this case does not rest alone upon the possession of the executor but upon other facts which create the estoppel.

It is next insisted by counsel for plaintiff that estoppels must be mutual, that the judgment probating this will in common form did not bind other persons interested in the will, that the estoppel was not mutual, that the same could not be taken advantage of by strangers, that other legatees and parties interested in the will did not in any way act or change their condition upon the admission made by the executor in probating the will in common form. In support of these contentions, counsel rely upon certain cases to which we shall briefly allude. In *Bryan* v. *Duncan,* 11 *Ga.* 67, this court held that a trustee could purchase from his cestui que trust, who was sui juris, the trust property and the outstanding claim of another to the property, where there was no fraud, concealment, or advantage taken of the beneficiary by the trustee. In *Gaither* v. *Gaither,* 23 *Ga.* 521, an estoppel by judgment and admission of the executrix, arising from the probate of the will in common form, was invoked to bar the executrix as heir at law of the testator from seeking to set aside the probate in common form, and to have the instrument which purported to be the last will of the testator declared null and void because obtained by duress. This court properly held in that case that the testatrix was not estopped by that judgment, because it was not binding upon the other legatees, and that for that reason the estoppel was not mutual. This court further held that the executrix was not estopped by her admission that the instrument probated in common form was the will of the testator, because the other legatees had in no way acted upon this admission or changed their condition. That case differs from the one now at bar, for the reason that the estoppel set up in the case under consideration did not rest solely upon the judgment of the court probating the will in common form, nor upon the implied admission of the executor arising from its probate in common form that it was the will of the testator. The estoppel set up in the case under consideration arises from the inconsistent position taken by the executor. In *Board of Education* v. *Day,* supra, this court distinguished an estoppel arising from a representation or admission and an estoppel arising from the election of inconsistent remedies or inconsistent rights. Speaking of an estoppel arising from the election of inconsistent remedies or rights, this court said: "Some of the cases which adhere to this latter view deal with the question as if it were one of estoppel

in pais between parties to a transaction, and treat the bringing of the first suit as if it were only a representation or admission, and seem to think that there must be a superadded element of change in condition, or action in reliance on it, to prevent the plaintiff from dismissing his suit and asserting an inconsistent remedial right. To us this appears to be too restricted a view. Unquestionably a person may estop himself in this as in other matters by misleading another to his injury or causing such other to change his situation. But the doctrine of election of inconsistent remedies or inconsistent remedial rights rests on a broader basis."

In *Fulcher* v. *Mandell,* 83 *Ga.* 715 (10 S. E. 582), this court ruled that the fact that the administrator had alleged in his inventory and returns that certain assets belonged to the estate did not estop him from showing that his intestate inherited the property from his wife subject to her debt to the administrator individually. Here there was no inconsistency between the positions taken by the administrator. In *Harris* v. *Woodard,* 133 *Ga.* 104 (65 S. E. 250), it was held that an executor as such was not estopped to attack the validity of a judgment which was sought to be enforced against the property of the estate, by admissions in reference to such judgment made by him in a suit which he, in his individual capacity, had brought against the judgment creditor. It was likewise held that he would not be thus estopped if such judicial proceeding had been brought by him in his representative capacity, when the estate derived no benefit and the judgment creditor no injury in consequence of such admissions. In *Williams* v. *Whealon,* 86 *Ga.* 223 (12 S. E. 634), the wife took the husband's money, bought land with it, and instead of having the vendor make title to her husband, caused the vendor to make an absolute deed to a third person for the purpose of securing a loan. The wife had one son by a former marriage. The son and husband were her sole heirs at law. The husband was appointed her administrator. He brought suit against the vendee and the son, in which he sought to enforce an implied trust in his favor by reason of the fact that his money had paid for the land. It was held that the mere fact of his appointment as administrator did not prevent his setting up the implied trust. In that case the husband had not treated the property as the property of his wife. *MacDougall* v. *National Bank of Columbus,* 150 *Ga.* 579 (104 S. E. 630), *Copelan* v. *Mon-*

*fort,* 153 *Ga.* 558 (113 S. E. 514), and *McFadden* v. *Dale,* 155 *Ga.* 256 (116 S. E. 596), were cases which involved the right of an executor to sue his coexecutors to enforce claims against the estate. In *Bussey* v. *Bussey,* 157 *Ga.* 648 (121 S. E. 821), a son probated the will of his father, was appointed executor, and took possession of the land in dispute. The executor afterwards resigned and took a deed from his mother to the land in his possession. In that case it was held that the plaintiffs, having no title, could not recover against the executor in his individual capacity, upon the ground that he was estopped from asserting title to the land in question by reason of the fact that he took possession of it as executor, this court holding that estoppel did not convey title and could only be asserted defensively to prevent a recovery. That case is clearly distinguishable from the case at bar.

So we are of the opinion that the facts set up in that portion of the answer of the defendant, which was stricken by the court, created an estoppel by election, and that the court below erred in sustaining the demurrer of the plaintiff thereto and in striking that portion of the answer of the defendant. For this reason a new trial must be granted.

5. We shall in this place dispose of the motion to suppress the interrogatories upon the grounds stated, although the same questions are made in the motion for a new trial, which was overruled, and it will not be necessary to refer to the objection to this testimony in the part of the opinion dealing with the motion for new trial. The objections to the interrogatories and the grounds upon which the motion to suppress were based may be taken in groups. The proceeding to perpetuate the testimony of the witness Ellen W. Bellamy was under section 4560 of the Civil Code, hereinbefore quoted. The first four grounds of the motion to suppress make the point that the answers to these interrogatories can not be used, because the suit as filed was against only one of those named as probably interested, and not against all; for the legatees and devisees were not sued. We do not think this objection to the interrogatories is meritorious. The code section to which we have just referred requires the application to the judge of the superior court, among other things, to state the names of "the parties probably interested on the other side." We do not think it is neces-

44

sary, in order to make this application and the interrogatories taken under the provisions of this section available, that suit should be brought against all of the parties named as being probably interested. If the party against whom the suit is actually brought, and who is actually interested in the suit, and who is properly made a party defendant, is named, that is sufficient. The very use of the expression "probably interested" indicates that if the applicant for the order to take the evidence under the interrogatories should be mistaken as to some of the parties, it would not be necessary to include them as defendants in case the applicant for the order should afterwards ascertain that they were not necessary parties.

6. In several of the grounds of the motion to suppress the interrogatories it is alleged that the parties were not served with process or notice, and that no process was prayed for or issued. We do not think this was necessary. The statute does not require it. Under other provisions in the code the depositions of a witness can be taken simply by giving written notice to the opposite party. It is not contemplated by the statute that the opposite party should have an opportunity to answer the application, or demur to it, or show cause why it should not be granted. We do not think that the right to take testimony is analogous to a suit wherein the rights of parties to property are put in issue and are litigated and determined. As a general proposition, it may be said that a party is not required to litigate the question as to whether he should be allowed to take the testimony of a witness. Notice is given under the provisions of the law, so that the opposite party may file cross-interrogatories, may sift the witness as he would on cross-examination in court, and, in certain cases, make objections to interrogatories that are open to objection. The defendant in this case had notice given in accordance with the provisions of the code section above referred to. Counsel for defendant contend that the act of 1856 (Acts 1855-6, p. 141) was the law up to the time code section 4560 was adopted, and that the omission of a part of an act from the Code did not repeal the portion omitted, if nothing in the Code conflicted with it. Under the act of 1856 the commission could not issue until after five days notice; the words of the statute as originally passed being, "which commission is not to issue, however, until the applicant has given

the opposite party five days notice and served him with a copy of the interrogatories filed in the clerk's office as aforesaid," etc. The provision quoted as to notice was omitted by the codifiers. But the Code containing the provision as codified was adopted by the legislature, and we think that the effect of adopting the Code was to enact into one statute all the provisions of the law intended to be continued in effect upon this subject. The statute under which these proceedings were instituted contains all the law upon that immediate subject. *Central of Ga. Ry. Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518); *Atkinson* v. *Swords,* 11 *Ga. App.* 167 (74 S. E. 1093). "Where the later of two acts covers the whole subject-matter of the earlier one, not purporting to amend it, and plainly shows that it was intended to be a substitute for the earlier act, such later act will operate as a repeal of the earlier one though the two are not repugnant." *Thornton* v. *State,* 5 *Ga. App.* 397 (63 S. E. 301). The provision in the act of 1856 quoted above was repealed by section 4560. That act required five days notice before issuance of the order. The Code requires that notice be provided in the order. The two provisions are in conflict; but the code section covers the entire subject, giving the right to the order and providing the kind of notice to be given.

7. The motion with which we are dealing also raised the objection to the interrogatories that legal notice was not given to the opposite parties. Section 4560 of the Code, under which the proceedings to perpetuate testimony were instituted, contains, among others, the provision that the written application to the judge for the order requiring some disinterested attorney of the court to act as commissioner, etc., shall be accompanied with the written interrogatories to be propounded to the witness, etc., and the judge shall, when the requirements of the statute are complied with, pass the order requiring a disinterested attorney of the court to act as commissioner and take such testimony, and that the judge shall provide "in such order for the most effectual notice to the opposite parties." The judge in the order passed in this case did provide for notice by providing for publication of the notice. But his order also provided that "notice of intention to take testimony be served upon Mrs. Gazalene M. Hardeman, and that such notice be published in the Macon Telegraph one time, on the 19th day of July, 1924." The testimony was to be taken on Wednesday, July

23d. The petition and order were served on Mrs. Hardeman on July 18, 1924; for counsel acknowledged due and legal service of the petition and order, and waived "all other and further service and copy." There was some variance between the notice published in the Macon Telegraph and the order granted by the judge. If these variances could have been material had the published notice been the only notice given Mrs. Hardeman, we do not think they are material in view of the fact that Mrs. Hardeman was served and acknowledged service by her counsel of the application and order as granted by the judge. She was the only party defendant, and she had notice, which the judge evidently deemed reasonable and effectual; and there does not appear to have been any abuse of his discretion in the matter.

8. One ground of the motion with which we are dealing alleges that the notice published does not state where the commissioner resides. The Code does not require that the notice should state the residence of the commissioner. The statute provides that the judge shall pass an order requiring some disinterested attorney of the court to act as commissioner, etc. In the order attacked in this motion it is provided that "Robt. L. Anderson, a disinterested attorney of the court," should act as commissioner, and we deem this sufficient.

9-10. The rulings made in the 9th and 10th headnotes need not be elaborated.

11. There are numerous grounds of the motion to suppress the interrogatories, based upon the contention that when the application was made to take the testimony the applicant could, at that time, have commenced suit. This objection appears in one form or another in grounds 5, 6, 7, 8, 9, 23, and 24. In the application it is stated that it is the intention of the applicant to institute in the superior court of said county a suit against the administrator with the will annexed of Mrs. Gazalene Ellis and the legatees and devisees under her will, to recover the property which belonged to the said Mrs. Ellis before her death. It is further stated that the applicant has been the executor under said will, but has resigned as such executor, naming Mrs. Gazalene M. Hardeman as a person qualified and willing to accept the trust; that applicant can not now commence said suit, for the reason that the administratrix with the will annexed has not yet been appointed.

The statements just quoted, made in the application, were true as a matter of fact; and we think that they showed sufficient reason for perpetuating this testimony. Section 4560 of the Civil Code in part reads as follows: "If any person desires to perpetuate the testimony of a witness, in anticipation of litigation not yet pending, and which it is not in his power to commence, he may make written application to the judge," etc.; and the point is made that the condition upon which the application can be made under the provisions of this section did not exist, for the reason that when the application was made to take the testimony the applicant could, at that time, have commenced this suit; that it was within his power to commence a suit against the proper and necessary parties, in which said suit all the rights of the applicant, both legal and equitable, as disclosed by his application, could have been fully protected. We can not agree with the contention made in these grounds of the motion to suppress. Conceding that it was within the power of the applicant to commence his suit against the devisees and the legatees, or that he might have commenced a suit against himself as executor, which alleged right is not entirely free from doubt, he could not be forced to adopt a proceeding against numerous legatees and devisees—for they were numerous, and some of them non-residents, and some minors,—because a proceeding against these numerous defendants and classes of defendants would have subjected him to the risk of omitting some party that should be named as a defendant to the suit, of failing to give effectual notice, or to other risk, which will at once occur to one considering the situation. Nor could he be compelled to substitute a suit against himself for a suit against the administrator cum testamento annexo; because the right of a sole executor to sue for and claim in his own right the entire estate of his testator and make no other party defendant to contest such a claim save himself, would be one that might be challenged upon legal, equitable, and ethical grounds. Under the facts appearing in the proceeding to perpetuate the testimony the plaintiff could not then bring the suit which he has elected to bring, a suit in which all of the rights of the plaintiff and the estate of Mrs. Ellis can be fully settled, protected, and decided; and consequently the court did not err in overruling the grounds of exception to the interrogatories referred to in this division of the opinion.

12.  We can not agree with the contention of counsel for plaintiff in error that section 4560 of the Civil Code, relating to the application and order for the perpetuation of testimony, is unconstitutional and void upon the ground that it is in violation of the due-process clause of the State and Federal constitutions, in that all proceedings under that code section specified as necessary to be had in perpetuating testimony are entirely ex parte; that the code section nowhere provides for notice of any kind upon parties probably interested upon the other side to that of the applicant, so that the opposite parties might show cause, if any they had, why the prayers of the application should not be denied; that under that code section interested parties have no voice in the application; and that no service of notice of any kind upon opposite parties is provided in the section, and no voice is given to them in the naming of the commissioner, and no opportunity is presented to such interested parties to plead to the application.  The section does provide for notice to the opposite parties, and they have opportunity to file cross-interrogatories before the testimony is taken. The object of the application to perpetuate testimony is the procurement of an order appointing a commissioner who shall take the testimony.   While this testimony may bear upon the question of property rights, the proceeding does not determine property rights.   It merely gives opportunity to take evidence bearing upon the question of those rights, and the opposite parties to the applicant have opportunity, under the provisions of the section under criticism, to file cross-interrogatories, by which they may elicit any testimony that the witness may be able to give and that the parties filing the cross-interrogatories may desire.

13-14.   Being now brought to a consideration of the motion for a new trial, we pretermit for the present a discussion of grounds 1 and 2 (all references by number hereinafter made being to the amended motion for new trial).   In ground 3 of the motion it is complained that the verdict is contrary to the evidence, for that there is nothing in the evidence, as movant contends, showing the value of the property claimed, nor the value and extent of the services, so that it can be determined whether the services performed constituted an adequate or a grossly inadequate price for the estate of the persons with whom the alleged contract was made; and it can not be determined, movant contends, in the absence of such

essentials, whether the alleged contract was unfair, or unjust, or against good conscience. We do not think that it was essential in this case to introduce evidence to show the value of the property, or the value in money of the services which the plaintiff in this case rendered or was expected to render, under the terms of the contract. It is true that this is a case of specific performance; and it has been held by this court that, specific performance not being a remedy which either party to the contract can demand as a matter of absolute right, it will not in any given case be granted, unless strictly equitable and just. *Kirkland* v. *Downing,* 106 *Ga.* 530 (32 S. E. 632). "In the absence of allegations in the petition as to the value of the lands, or of the value and extent of the services alleged as the consideration of the contract, it is impossible for a court to determine whether the services performed constituted an adequate or grossly inadequate price for the estate of the person with whom the alleged contract was made; nor could it be determined, in the absence of such essentials, whether the contract was unfair, or unjust, or against good conscience." *Potts* v. *Mathis,* 149 *Ga.* 367 (100 S. E. 110). These rulings and the code section upon which they are based are urged in the argument of counsel for plaintiff in error; but we do not think that in a case like this, based upon a contract like that shown in the record, for a consideration of services and the performance of duties like those devolving upon plaintiff under the contract, the rulings made in the case last cited are applicable here. The cases of *Potts* v. *Mathis,* supra, and *Shropshire* v. *Rainey,* 150 *Ga.* 566 (104 S. E. 414), are, we think, on the facts and principles involved, essentially different from the case at bar. We do not think it necessary to discuss this ground of the motion at greater length. We think the ruling that we have announced is necessarily deducible from decisions already rendered by this court, in which this doctrine is laid down. Certain of those decisions were referred to in the division of this opinion in which we ruled upon the demurrers to the petition. From certain of those decisions we quoted excerpts; it is not necessary to reproduce those here, but we refer again to the cases of *Crawford* v. *Wilson,* 139 *Ga.* 654, *Copelan* v. *Monfort,* 153 *Ga.* 558; *Ansley* v. *Ansley,* 154 *Ga.* 357; *Redford* v. *Lloyd,* 147 *Ga.* 145, and *Bird* v. *Trapnell,* 147 *Ga.* 50. In these cases last cited will be found other decisions cited, upholding the ruling which we

have made above. Certain of these cases have also been referred to and quoted from in disposing of the demurrers. Nor are outside authorities wanting to the same effect. What is here said rules the question made by the assignment of error contained in the 14th ground of the motion.

15-17. The rulings made in headnotes 15, 16, and 17 require no elaboration.

18. The court charged the jury in part as follows: "Now the plaintiff in the second count has this contention: he contends that another contract separate and distinct from that was made between William Lee Ellis, his uncle, Mrs. Gazalene Ellis, his aunt, and himself, in the City of Macon, at the home of William Lee Ellis Sr., and shortly before the death of his uncle, William Lee Ellis; and that by the terms of this contract, if he, William Lee Ellis Jr., the plaintiff, would agree not to take some position that had been offered him in Baltimore, or somewhere—you can remember from the testimony, but would give up that place or relinquish that position which they contend had been offered to him, and would remain with his aunt, Mrs. Gazalene Ellis, until her death, then in that event, upon the death of Mrs. Gazalene Ellis, he, the plaintiff, William Lee Jr., should receive all the property of both the uncle and the aunt." This charge is excepted to upon the ground, among others, that the jury were misled as to the true construction of the second count of the petition; that the court here construed the second count of the petition as containing and referring to but one contract or agreement, whereas that count refers to two agreements, to wit, an alleged agreement between the parents of the plaintiff, on the one hand, and William Lee Ellis and Mrs. Gazalene Ellis, plaintiff's uncle and aunt, on the other; and to a second agreement or contract made by plaintiff with his uncle and aunt. We do not think the charge quoted and here excepted to is open to this criticism; or to the attack on the ground that it was virtually "an instruction to the jury that if plaintiff gave up a position at Baltimore or at any other place, he would have complied with the parts of the contract which related to the giving up of a position;" or to the further criticism, that it "confused the minds of the jury with respect to the pleadings in the case and the evidence in the case." The extract from the charge last quoted states in part accurately the contentions of the plaintiff as set

forth in the second count. The fact that other and further instructions might be necessary to make clear all the contentions of the plaintiff in the second count or in the evidence bearing upon the second count would not render erroneous the portion of the instruction which is here applicable to the issues.

19-21. The rulings made in headnotes 19, 20, and 21 need not be elaborated.

22. The court charged the jury in part as follows: "As to the Baltimore contract—I am referring to the contract alleged to have been made between William Lee Ellis Sr., Mrs. Gazalene Ellis, and William Lee Ellis Jr., in Macon, shortly before William Lee Ellis died; that is, the contention as to the Baltimore contract in the second count—I charge you that you are to determine what, if anything, took place between the parties at the time the contract is alleged to have been made, and whether what took place amounted to a contract. To make a contract there must be a meeting of the minds ·of the parties, that is, a common understanding between the parties as to what the agreement was. If you find that there was a conversation between William ·Lee Ellis Sr. and his wife and William Lee Ellis Jr., and there was an understanding between them as to the terms of an agreement, and that common understanding was acted upon by the parties, that would amount to a contract. It was not necessary as a matter of law that William Lee Ellis Jr., the plaintiff in the case, should have said anything, if what was said and done amounted to an agreement, which was understood and acted upon by all the parties." The movant contends that this charge is error, "because no valid contract such as is set up in the petition could be proven by conversations such as are set forth in said charge, and particularly without any distinct statement of promise made by the plaintiff;" and further the movant contends that "a contract such as is here involved could not be proven and a valid and legal understanding could not be reached amounting to a contract in the situation here presented to the jury, and which the jury was instructed would be sufficient to constitute a valid contract." The charge here excepted to was a proper one, in view of all the issues made in the case and a consideration of the nature of the services to be rendered by the plaintiff and his relationship to the

other parties to the contract, if the contract which the plaintiff sets up was actually made.

23-25. The rulings made in headnotes 23, 24, and 25 require no elaboration.

26. The defendant duly presented the following written request to charge: "I charge you that before there can be a recovery by the plaintiff, William Lee Ellis Jr., under the second count of his petition in this case, he must prove to your satisfaction, by a preponderance of the evidence, so clear, so strong, and so satisfactory, as to leave no reasonable doubt on your minds, that a short time before the death of William Lee Ellis Sr., the plaintiff was offered a business opportunity in the City of Baltimore, Maryland, which he agreed to accept; that his aunt, Mrs. William Lee Ellis Sr., upon learning of his contemplated removal from Macon, agreed with plaintiff that if he would not go away from Macon to live, and would remain at home with her as long as she lived, she would, at her death, leave to plaintiff all her property, and that thereupon plaintiff agreed in consideration of these promises of his aunt, Mrs. William Lee Ellis Sr., to give up said business opportunity at Baltimore, and to remain at Macon with her; and that he, the said plaintiff, fully performed said contract on his part, and did give up said business opportunity at Baltimore, and did remain at Macon with his said aunt, Mrs. William Lee Ellis Sr., until her death." This request to charge the court refused to give; and properly so, we think. One expression in this charge, to wit, "and that thereupon plaintiff agreed in consideration of these promises of his aunt, Mrs. William Lee Ellis Sr., to give up said business opportunity at Baltimore, and to remain at Macon with her," might have misled the jury by causing them to believe that an express agreement at the time referred to, upon the part of the plaintiff, was essential to complete the contract; whereas, if the plaintiff did give up the position referred to and there was performance on his part of those things which he was to do and perform in view of the promises, that would have been sufficient in view of the contract. And moreover, the request to charge contains this expression: "did remain at Macon with his said aunt, Mrs. William Lee Ellis Sr., until her death." This might have been construed by the jury as requiring the plaintiff to show by evidence that he did continuously remain in Macon until the death of his

aunt. The court more properly charged the jury upon this and similar subjects, by instructing them as to what absences from Macon or absences from the home of Mrs. Ellis with her consent and permission would not amount to an abandonment and breach of the contract.

27. William Lee Ellis Jr., the plaintiff, being on the stand as a witness in his own behalf, had testified that in 1902 he was offered a position in Baltimore, and that if he had accepted this position he would have to move away from Macon; that he did not accept the position; that his uncle had all to do with his failure to accept the position referred to; and then proceeded in that connection to testify further: "When I was offered this position to leave Macon, my uncle did not want me to leave Macon, and he had no one to leave with my aunty, as he knew that nobody else, practically, would live with her; and he prevailed on me, in fact insisted that he did not want me to leave Macon, and it was then and there—he said both Dr. McHatton and Dr. Winchester had told him that he was in bad shape and would never get well, and it was worrying him. And I came into Macon and told him about this position, and he didn't want me to accept it; says: 'I'm getting old, your aunt is old, and she has been in bad health all of her life and nervous, and I want you to live with her here. We want you to live here with us.' And he told me about taking me from my mother and father, taking me to Christ Church, and at that time my father and mother had nothing to do with it. Mr. Champion, his business partner, was my sponsor or godfather. Then we discussed different things, and he says, 'Now, I want you to live with your aunty the balance of her life, as I haven't got long to live, and I don't know about her. She has been in bad health; and if you will live with your aunty, when your aunty and I die we'll leave you what property we have got.' And it was then and there that we decided on not going to Baltimore, and I didn't accept the position, passed it up. This conversation took place in our house at 531 Georgia Avenue, down next to where Mr. Nat Harris was living, in the sitting-room after supper. I didn't accept the position in Baltimore, on account of what he had said to me. I agreed with him not to accept a position if it took me away from Macon to live, or any other position that would take me away from Macon, as long as my aunt was living."

Counsel for defendant then and there objected to so much of this testimony as undertook to state what William Lee Ellis Sr. (referred to in the foregoing excerpt as "uncle") said to witness, the plaintiff in the case, and to so much of the conversation above quoted as undertook to repeat what the witness, William Lee Ellis Jr., said to his uncle, and to so much of the testimony as, in effect, stated that the witness on account of what his uncle said to him agreed not to accept the Baltimore position, if it took the witness away from Macon, as long as his aunt, Mrs. Gazalene Ellis, was living. Counsel for defendant urged the following objections, among others, to this testimony: "That William Lee Ellis Jr. was an incompetent witness to testify as to any conversations between himself and William Lee Ellis Sr., for that under the proof in the case Mrs. Gazalene Lamar Ellis, whose personal representative is a party to this suit, was the transferee of William Lee Ellis Sr. That what William Lee Ellis Sr. said in relation to the matter testified about can not bind Mrs. Gazalene Lamar Ellis nor her estate. That if it be contended that what William Lee Ellis Sr. said bound Mrs. Ellis on the theory that she was present and by her silence adopted all that the said William Lee Ellis Sr. said, then it became a communication between Mrs. Ellis and William Lee Ellis Jr., and she being dead and her legal representative a party to the suit, the plaintiff, William Lee Ellis Jr., as a witness will not be heard to testify as to any such conversations or communications with the deceased party." The court admitted the evidence over the objections urged, and to this ruling the movant excepted.

We are of the opinion that the court erred in admitting this testimony. The plaintiff was seeking to recover the entire estate of Mrs. Gazalene Ellis, under a contract which he alleged was made by him with Mrs. Ellis and her husband. Was it competent for the plaintiff to testify to transactions and communications had between himself and William Lee Ellis Sr., the effect of proving these transactions and communications being to show that the contract alleged was entered into between the parties? From the report of the case of *Hendricks* v. *Allen,* 128 *Ga.* 181 (57 S. E. 224), it appears that Allen brought suit against the administrator of Locke, deceased, and Hendricks, to compel the administrator to make him a deed to certain lands, and to enjoin Hendricks from

foreclosing a mortgage on the land, and to cancel this mortgage. It was alleged in the petition in that case, that in 1890 the petitioner, Allen, applied to Locke for a loan of $135, with which to purchase the land; that Richard Nelson loaned the money "to said Locke for petitioner to purchase the land;" that said land was then purchased (from Kahn and others) for the sum of $135, by petitioner, and a deed was executed to the land in favor of petitioner, according to petitioner's understanding, and was to be kept in the possession of Locke until petitioner should pay for the loan which Locke had procured from Nelson for petitioner; that the petitioner finished paying Locke the amount due him by petitioner on the loan, about September 1, 1892, and petitioner "then agreed with Locke that he, the said Locke, should continue to keep possession of petitioner's deed to said land, as petitioner was then indebted to said Locke for a balance due on material that was used by petitioner in building a house on said land and making other improvements thereon. Petitioner finished paying the balance due Locke on said material some time in July, 1893," but, having confidence in Locke, petitioner allowed said deed, "which he believed was in possession of said Locke," to remain in his possession, "not knowing that there had never been such a deed in petitioner's favor." The petitioner further alleged that a deed to the land in controversy was executed on October 13, 1890, by Kahn and others to Nelson, and that on February 28, 1893, a deed to the same land was executed by Nelson to Locke, which petitioner charged was a fraud on him; and that in 1894 Locke executed to defendant, Hendricks, a mortgage on the land without petitioner's knowledge or authority, and that same was fraudulent. The case proceeded to trial, and the jury returned a verdict in favor of the plaintiff. Hendricks moved for a new trial upon various grounds. The judgment refusing a new trial was reversed, and in the course of the opinion rendered this court said: "The plaintiff in error complains, in one of the grounds of his motion for a new trial, that the court erred in permitting the plaintiff to testify, in substance, that in 1890 he (plaintiff) borrowed $135 from Nelson to pay Kahn and others for the land in controversy, and that he had since repaid that sum to Nelson. This testimony was objected to on the ground that Nelson was dead and the opposite party to the case was a transferee or assignee of Nelson. Plaintiff in error

rests his contention upon the provisions of the Civil Code, § 5269, subsection 1: 'Where any suit is instituted or defended by a person insane at time of trial, or by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person.' The effect of the testimony above referred to, the same relating to a transaction between plaintiff and the deceased Nelson, was to impeach the right of Nelson to convey the property in controversy to Locke. And inasmuch as the administrator of Locke, the assignee or transferee of Nelson, was a party defendant in the case, we think that the court erred in admitting this testimony, over the proper and timely objection of the plaintiff in error."

Under the facts in that case, considering the relationship of the parties and the witness, what is there said is applicable to the question presented in this case as to the admissibility of the testimony of William Lee Ellis Jr., set forth above. And that becomes more apparent when we consider the allegations in the amendment to the petition, filed on March 10, 1925. That amendment contains, among others, the following allegations: "Petitioner's foster mother, at the time of her marriage to William Lee Ellis Sr., had no property of her own, and never subsequently acquired any property with her own means. Her husband accumulated all the property which she owned at the time of her death, and had title put in her name with the understanding that all of said property at the death of the survivor of them was to go to and become the property of petitioner. William Lee Ellis Sr. died on the 27th day of May, 1902, intestate, leaving as his sole heir-at-law his wife, Mrs. Gazalene Lamar Ellis. He left no debts which have not been paid, and no administration was ever had upon his estate." In the case of *Hendrick* v. *Daniel,* 119 *Ga.* 358 (46 S. E. 438), it was said: "Following the former decisions of this court, therefore, and giving to the words 'assignee' and 'transferee,' as used in the code, a literal construction, we are forced to the conclusion that they cover the grantee in a conveyance of land. These words are the broadest that could possibly have been used. A literal construction of either necessarily includes a vendee, grantee, or donee. That such was the meaning intended to be given them by the law-making power we think

can easily be established by an application of any or all of the well-known rules for the construction of statutes. The act of 1889 and the amending act of 1893 are both remedial statutes. The evil sought to be cured was that the living took advantage of the dead, the sane of the insane, by giving testimony the power to contradict which was buried in the tomb or obscured by dethroned reason. By the decision of this court in the case of *Woodson* v. *Jones* [92 *Ga.* 662, 19 S. E. 60], it was brought to the attention of the General Assembly that the act of 1889 failed of its full purpose, and it was accordingly amended by the act of 1893. To use a homely metaphor, by inserting in the law as it stood the word 'endorsee' the legislature healed the particular malady pointed out by the decision in the case cited, and then, to guard against a relapse, or the possibility of a similar attack in the future, it inoculated the patient with the words 'assignee' and 'transferee.' The mischief as it existed prior to the passage of the act of 1889 was plain. That act did not accomplish its full purpose, and so, in 1893, the General Assembly amended it so as to cover all possible cases where the same mischief threatened, and where estates, real, personal, or mixed, of deceased or insane persons might otherwise be obtained or damaged by allowing parties to suits affecting such estates to testify to communications and transactions with such deceased or insane persons. With the full nature and extent of the evil clearly apparent, we can not believe that the General Assembly intended to protect the estate of a deceased endorsee of a note against the testimony of the living maker, at the same time allowing it to be wronged by nullifying his warranty deed to a tract of land. On what theory it can be supposed that the General Assembly sought to protect the purchaser of a note and leave unprotected the grantee of a piece of real estate we are at a loss to conceive." While it may be that the evidence does not show whether the husband transferred any property to the wife after the making of the contract set forth in the second count of the petition, the portion of the amendment which we have quoted above is an amendment to the second count, and alleges, in terms, that the husband "accumulated all the property which she owned at the time of her death and had the title put in her name with the understanding that all of said property at the death of the survivor of them was to go to and become the property of petitioner." Con-

sidering all the allegations in count two of the petition in connection with the amendment, we think that Mrs. Gazalene Ellis, upon the death of her husband, is to be regarded as his personal representative. In the case of *Johnson* v. *Champion,* 88 *Ga.* 527 (15 S. E. 15), it was held: "A widow whose husband died intestate after the passage of the act of December 12th, 1882 (Acts 1882-3, p. 47), leaving no lineal descendants, is, in the absence of evidence that he left debts which are still unpaid, entitled to his whole estate without taking out letters of administration thereon. And being so entitled, she is his 'personal representative,' and in a suit against her by one claiming to be a creditor of her husband, the plaintiff is not a competent witness to establish an alleged contract between himself and the deceased out of which the alleged indebtedness arose." See also *Tidwell* v. *Garrick,* 149 *Ga.* 290 (99 S. E. 872), and *Kramer* v. *Spradlin,* 148 *Ga.* 805 (98 S. E. 487). Under the authority of these cases, which applied subsection 1 of § 5858 of the Civil Code to the facts of the cases there under consideration, we are of the opinion that the objections to the evidence of William Lee Ellis Jr. should have been sustained.

28. In ground 25 of the motion for a new trial error is assigned upon the following charge of the court: "The defendant contends further that the alleged contracts with Mr. and Mrs. William Lee Ellis were not in fact made; that the property in dispute belonged to Mrs. Gazalene Ellis, that she had a right to dispose of it by her will in any manner agreeable to herself; that the plaintiff, William Lee Ellis Jr., recognized this for more than two years, probating the will, qualified as executor, paid out something like $9,000 in payment of Mrs. Ellis' debts, made out an income-tax report; and that this suit is only an afterthought, filed in the hope that the will might be nullified. Now all those alleged facts and circumstances may be considered by you as throwing light on the main issue, as to whether the contracts contended for have been established or have not been established; but if the contract or contracts have been established with that degree of certainty required by the law, neither one of those circumstances nor all of them would deprive plaintiff of any rights he might have under any such established contracts." The movant insists that this charge was error, for the reason that the proved and admitted con-

duct of the plaintiff as set forth in that charge made an estoppel which would prevent a recovery on the part of the plaintiff and constituted a distinct and deliberate election of rights and remedies which should and would bar the plaintiff from recovery. We have already considered the question of estoppel. But error is assigned upon the charge last quoted upon another ground; and that is, that the charge was error for the reason that by the instruction there given the effect of the evidence referred to in the charge was limited to the consideration as to whether the contracts were made; and that the evidence referred to in this charge was for consideration by the jury for the purpose of determining whether the contracts, if made, were performed by the plaintiff, whether he was consciously aware that he had not performed the contracts, and that said evidence was properly for consideration by the jury for the purpose of determining whether, if the contracts were made, the contracts, or either of them, were voluntarily abandoned or rescinded by the parties. We are of the opinion that the criticism upon the charge points out a real defect in the instructions. The limitation upon the application of the evidence should not have been made. The facts and circumstances referred to in that charge were for the jury's consideration, not merely upon the question as to whether the contract sued on had been made, but as to whether or not, in the language of the exception, the plaintiff "was consciously aware" of the fact that the contract had been abandoned, breached, or rescinded. It was for the jury to determine whether or not the action of the plaintiff was not in the nature of an admission that he had not so performed his part of the contract as to entitle him to specific performance thereof. What we have just said in disposing of the portion of the charge set forth in ground 25. of the motion for new trial is applicable to the exceptions to that portion of the charge set forth in ground 26.

29. In ground one of the motion for new trial is set forth the contention that the verdict is contrary to evidence; and in that ground movant insists that the only testimony offered to show any contract between the parties was that of two named witnesses. We will not take up this ground for decision. As the judgment of the court below refusing a new trial is reversed upon other grounds and the cause is to be tried again, we will follow the usual

45

practice in such cases, and withhold any expression of opinion as to the sufficiency of the evidence to support the verdict.

30. In the cross-bill of exceptions error is assigned on the following portion of the decree: "Further adjudged and decreed that the claim of plaintiff hereinabove established is subject to the payment of all just debts of Mrs. Mary Gazalene Ellis, to the payment of costs of administration, and reasonable counsel fees incurred by · defendant in this case; and defendant is authorized to retain from the assets to be turned .over to plaintiff such amount as may be necessary to pay such debts, costs, and counsel fees." In view of the fact that the judgment of the court below has been reversed on the main bill of exceptions and the case is remanded for another trial, we will not now decide as to whether or not the court was authorized to include in his decree that portion of the decree which awards costs of administration and counsel fees to the defendant. Nevertheless direction is given that this question be left open for decision until the next trial; and that the trial court, when rendering a decree upon a verdict of the jury, shall then consider and determine the question of costs and expenses.

The fourth headnote and fourth division of this opinion are by Associate Justice Hines. The other headnotes and the rest of the opinion were prepared by Presiding Justice Beck.

*Judgment reversed on the main bill of exceptions, with direction as to the cross bill. All the Justices concur, except*

BECK, P. J., dissenting in part. Being of the opinion that the court did not err in sustaining the demurrer to the fifth paragraph of defendant's answer, and in effect holding that the plaintiff was not estopped, by his acts and doings recited in this paragraph, from undertaking to set up as against the defendant his right to specific performance of the contract sued on, I feel constrained to dissent from the ruling of the majority in the fourth division of the opinion. It is true that the plaintiff as executor, after qualifying as such, continued in charge of the trust for a little over two years, and performed duties as such executor and expended during the · time that he held the office a large sum of money. But there was no inherent inconsistency in his acts in probating the will and paying out money, if such was necessary for the expenses of the estate, or in paying the debts of Mrs. Gazalene Ellis, and in now, after surrending the estate to a successor

and accounting for the same, insisting that the title to the property in regard to which specific performance is asked is his, under the contracts which he sets up. We recognize the general rule that "any decisive act by a party with knowledge of his rights and of the facts determines his election in the case of inconsistent remedies." *Kennedy* v. *Manry,* 6 *Ga. App.* 816 (supra). And that, "after the choice of one of two or more inconsistent remedies which he might originally have pursued at his option, to change his base and adopt a course wholly inconsistent with the remedy which he first selected," will not be permitted. Ib. Also *Board of Education* v. *Day,* 128 *Ga.* 156 (supra). And that a solemn admission in judicio is an estoppel everywhere and forever, has been ruled in numerous cases. This court has said: "As to what is a decisive act which constitutes a conclusive election barring the subsequent prosecution of inconsistent remedies, the authorities are not entirely agreed. It is quite clear that the prosecution of one remedial right to judgment or decree, whether such judgment or decree is for or against the plaintiff, will amount to such an act." *Board of Education* v. *Day,* supra. It is true that a judgment of the court of ordinary was had by the plaintiff, declaring the will he offered for probate to be that of the testator, and that judgment has not been objected to by any one. But the judgment probating the will was not a judgment in which the title to the property devised and bequeated in that will was put in issue. The judgment probating the will establishes the execution of the will by a person competent to make such a will. The plaintiff was named as executor of the will. He was in the line of his duty, as the named executor, in offering it for probate, unless he saw fit to expressly renounce the executorship and decline to probate the will. The probate of the will did not affect the title of any one actually having title to any of the property described in the will. In the case of *McFadden* v. *Dale,* 155 *Ga.* 256, which was decided on demurrer, it was held: "Where there are three executors qualified under a will, one of them in his individual capacity may, without resigning as executor, sue the other two in equity, as representatives of the estate, to establish an implied trust in his behalf as to an undivided interest in property purchased during the life of the testator with joint funds, title to which was taken in the name of the testator."

From the facts reported in the case of *Gailher* v. *Gaither,* 23 *Ga.*
521, it appears that B. T. Gaither died leaving a will, which was
admitted to probate in common form. In that will the wife of
the decedent was named as executrix, and she qualified as such,
but afterwards obtained a rule nisi against the other legatees
named in the will, to show cause why the probate of the will should
not be set aside and revoked on the grounds stated, including one
of testamentary incapacity, and of undue influence exerted upon
the testator. When the case came on for. hearing there was a
motion to dismiss the rule, on the ground that the named execu-
trix, having qualified as such and received letters testamentary
and proceeding to execute said will, was estopped from calling for
a probate of the same in solemn form, and from moving to vacate
the former judgment of probate; and that, having participated
in the proceedings for probate before the court of ordinary, she
could not then vacate that judgment or call for probate in solemn
form. This motion to dismiss the rule was refused, and excep-
tions were taken. Discussing these grounds of the motion, this
court said: "There are decisions to the effect that an admission
is conclusive upon the person who makes it, if it has been *acted on*
by the party whom it concerns. Many of those decisions are re-
ferred to in 1 Green. Ev. §§ 207, 208. The parties whom this ad-
mission concerned were the other legatees in the will, viz., the
brothers and sisters of the testator. But there is nothing in the
evidence going to show that these legatees by themselves or by a
guardian had acted upon this admission. There is nothing in the
evidence going to show that their situation was, in any respect,
different from what it would have been had Mrs. Gaither never
qualified as executrix. There are no *facts,* then, to bring the case
within the principle of these decisions. And there is no decision
to be found, I think, to the effect that an admission that has not
been acted on is conclusive. I must say, too, that I am not pre-
pared to give my assent to these decisions. They seem to me to
be calculated to overturn one of the fundamental principles of the
common law—the principle that no contract can bind that is with-
out consideration; and to be in conflict with another important
principle of the common law—the principle, that estoppels, to bind
either party, must bind both parties. See *Savage* v. *Jackson,* 19
*Ga.* 305. We think, then, that this admission was not *conclusive*

upon Mrs. Gaither. . . Was the second ground of the motion to dismiss the rule good? In other words, was the executrix, Mrs. Gaither, *estopped* by the *judgment* which admitted the will to probate? We think not. The judgment was a judgment, not *per testes,* and upon the citation of parties, but was a judgment in common form. It was a judgment, therefore, to which the other persons interested in the will, viz., the brothers and sisters of the testator, were not parties, and.therefore, was a judgment which did not estop *them.* They might still, for example, have set up another will more favorable to themselves, if they could have found such a one. And that which is not an estoppel to the party insisting on it as an estoppel can not be an estoppel to the other party. Estoppel, to be good, must be 'reciprocal.' 2 Coke Litt. 352 a."

I am of the opinion that there were stronger reasons in the *Gaither* case for holding that Mrs. Gaither was estopped from prosecuting her motion than there are in the present case for holding that the plaintiff can not maintain his suit for specific performance. See also the case of *Harris* v. *Amoskeag Lumber Co.,* 101 *Ga.* 641 (29 S. E. 302). "To amount to an estoppel, 'the admission made in judicio, or other admission, must be one upon which the opposite party has acted, either to his own injury or to the benefit of the person making the admission.' " *Jordan* v. *Jenkins,* 17 *Ga. App.* 58. See also *Harris* v. *Woodard,* 133 *Ga.* 104, and *Bussey* v. *Bussey,* 157 *Ga.* 648 (supra). For the reasons that I have stated, and in view of the decisions cited (and others might be cited to the same effect), I am of the opinion that the court did not err in striking the portion of the answer of the defendant which is here under consideration.

### ON MOTION FOR REHEARING.

HINES, J. In the motion for rehearing, counsel for plaintiff insist that this court overlooked the decision in the case of *Lamar* v. *McLaren,* 107 *Ga.* 591 (34 S. E. 116). In the case cited, this court was dealing with a case of election under the Civil Code (1910), § 4609. In that case testator had affected to give property in which one of his sons, who was one of the executors of his will, claimed an interest. Other legatees under the will denied the interest of the son in the property disposed of by the will of his father. In these circumstances, this court held that the case made one of election, but that the son should not be put to his election

until after an adjudication of the question whether or not he was the owner of some of the property disposed of by the will, and then only in the event this issue was determined in his favor. Otherwise the son might be unjustly treated. In the case at bar, the estoppel is not based upon the principle embraced in the above section of the Code and dealt with in the decision in the case cited. In the case now under consideration the estoppel is based upon the election by the plaintiff of a right clearly and unequivocally inconsistent with the position which he now takes. In the case cited there was no such inconsistency between the probate of the Lamar will by his son and his qualification as executor, and his claim to an interest in specific property disposed of by his father in his will, the son as such executor not having in any way so treated this property as the property of the testator as would estop him from asserting title to an interest in the property so disposed of under the will of his father. The facts, however, did make a case of election, but the son was not put to such election until his claim had been adjudicated in his favor. The facts in the case cited were similar to those in the case of *Williams* v. *Wheaton,* 86 *Ga.* 223 (supra), with which we dealt in the opinion rendered in this case.

In the next place, counsel for plaintiff in the motion for rehearing insist that we did not give full force and effect to *Gaither* v. *Gaither,* 23 *Ga.* 521. It is said that the position taken by Mrs. Gaither was inconsistent with the proceeding brought by her, attacking the will which she had probated in common form, and seeking to set it aside on the ground that the same was void because it was obtained by duress. This position of counsel would be well taken but for the fact that in the *Gaither* case Mrs. Gaither contended that she did not know that the will of her husband had been procured by duress at the time it was probated in common form. It is well settled that estoppel can not arise upon facts of which the party sought to be estopped had no knowledge. If Mrs. Gaither had known at the time she probated the will of her husband in common form that it had been obtained by duress, then she would have been estopped from afterwards attacking the will upon this ground.

It is insisted that the court did not give full force and effect to the decision in the case of *MacDougall* v. *National Bank of Colum-*

*bus,* 150 *Ga.* 579 (supra). The contention is that we overlooked the fact, appearing in the record in the case cited, that the plaintiff by qualifying as executor became estopped from asserting a claim to property in hostility to the estate of her testatrix. This point was raised in the record, but this court did not make any ruling thereon. However, the case cited is not in conflict with what we ruled in the case at bar. We undertook to show that the assertion by an executor of a claim to a particular piece of property of the testatrix was not inconsistent with the probate of the will by him and his qualification as executor. In such a case there is no such repugnancy as would estop the executor. In the case at bar, the executor probated the will in common form and qualified as executor, and partially administered the estate of his testatrix. By these acts he took the position, if not expressly, by clear implication, that the testatrix left an estate to be administered. After giving up his office as executor he brought the present suit, in which he alleged that all the property left by the testatrix and standing in her name belonged to him under the contracts of virtual adoption set out in his petition, and prayed for a decree declaring her entire estate to belong to him. By probating the will and in administering her estate partially he took the position that she left an estate to be administered. In the present proceeding he takes the diametrically opposite position that his testatrix left no estate to be administered. This situation is very different from one in which an executor asserts title to some portion of the estate of his testator. In such a case there is no such repugnancy and inconsistency as would estop the executor from enforcing his claim. In the case we are dealing with, there is such repugnancy and such inconsistency.

Plaintiff insists that we overlooked former rulings made by this court in cases cited, to wit: *Finch* v. *Finch,* 14 *Ga.* 362, holding that in probating the will the court does not decide upon the validity of any contract, but upon the factum of the will only, leaving the rights of parties under contracts to be determined by appropriate proceedings in proper tribunals thereafter; *Adams* v. *Johnson,* 129 *Ga.* 611 (59 S. E. 269), holding that the fact that a testator disposed of property which he does not own is no valid objection to the probate of his will; *Field* v. *Brantley,* 139 *Ga.* 437 (77 S. E. 559), holding that probate of a will does not include

HARDEMAN *v.* ELLIS. (162

any issue as to the validity of the testator's title to property therein disposed of; and *Trustees of the University of Ga.* v. *Denmark,* 141 *Ga.* 390 (2) (81 S. E. 238), holding that the only issue on probate is devisavit vel non, and that probate of a will is not an adjudication of the validity of a devise therein made. There is nothing in those decisions which is contrary to what is stated in the opinion in this case. We did not base the estoppel solely upon the judgment probating this will in common form. We held that such judgment by itself would not amount to estoppel. We did not hold that the title of the testatrix to the property involved in this case was adjudicated by such judgment; nor did we hold that the validity of devises or bequests made in this will was adjudicated thereby.

It is complained that in the fourth headnote and the corresponding division of the opinion we overlooked section 5738 of the Code, and the decisions in *Wilkins* v. *Gibson,* 113 *Ga.* 50 (38 S. E. 374, 84 Am. St. R. 204), *Harris* v. *Amoskeag Lumber Co.,* 101 *Ga.* 643 (supra), *Luke* v. *Hill,* 137 *Ga.* 161 (73 S. E. 345, 38 L. R. A. (N. S.) 559), and *Lynch* v. *Poole,* 138 *Ga.* 303 (75 S. E. 158). We did not refer in totidem verbis to section 5738 and to the decisions referred to in this ground of the motion for rehearing. It is undoubtedly true that the general rule is that "The doctrine of estoppel in pais is predicated upon a change of position to the hurt of one of the parties acting on the representations or conduct of the other." *Lynch* v. *Poole,* supra; Civil Code (1910), § 5738. In the opinion in this case we undertook to show that there was an exception to this general rule in the election of remedies and in the election of inconsistent rights. With this we shall deal further hereinafter. Furthermore, it is the general rule, applicable alike to estoppel by record, by deed, and to equitable estoppel in pais, that estoppels must be mutual. *Harris* v. *Amoskeag L. Co.,* and *Luke* v. *Hill,* supra. With the applicability of the rule to this case we shall deal further on in these remarks.

It is further insisted in this ground that the principle announced in *Board of Education* v. *Day* (supra), is applicable only to the case of election between two inconsistent legal remedies, and is not applicable to election between two inconsistent rights. To sustain this view counsel quote from the body of the decision in that case the reason given by Justice Lumpkin for the rule of

election of remedies, and draw therefrom the conclusion that the rule is applicable only in the case of election of inconsistent judicial remedies. This position is not well taken. "A party can not, either in the course of litigation or in dealings in pais, occupy inconsistent positions." "Where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts; and the election, if made with knowledge of the facts, is itself binding,—it can not be withdrawn without due consent; it can not be withdrawn though it has not been acted upon by another by any change of position." Bigelow on Estoppel (6th ed.), 732; 2 Herman on Estoppel, § 1045; Campbell v. Kauffman Milling Co., 42 Fla. 328 (29 So. 435); Farley National Bank v. Henderson, 118 Ala. 441 (22 So. 428, 437). This doctrine has been recognized by this court. In *Steele Lumber Co.* v. *Laurens Lumber Co.*, 98 *Ga.* 329, 357 (24 S. E. 755), this court said: "In making its election between these two rights, the Laurens Lumber Company has elected to sue for the recovery of the property and damages. Its election in both of the instances above indicated is final; for it seems to be a well-established rule, that if a party having the right to repudiate or affirm a transaction affirms it, he can not afterwards resort to his right of repudiation; and when it becomes necessary to choose between inconsistent rights, the election will be final; and some of the courts hold that such an election can not be reconsidered even where no injury has been done by the choice, or would result from setting it aside." So in the case under consideration, the plaintiff had two rights. He could have renounced his appointment as executor of this will, declined to probate the will, and could have resorted to his rights under the contracts which he now seeks to have specifically enforced. Or, he could probate the will, accept the office as executor thereof, qualify as such executor, proceed to administer the estate as he partially did, and claim the benefits coming to him thereunder. In electing to pursue the latter course, and asserting his right as executor to probate the will and administer the estate, he is now estopped from asserting his rights under the alleged contract which he seeks to enforce.

It has been questioned whether the subject of election of remedies or of rights properly belongs to the law of estoppel; but it has been generally so treated. Bigelow on Estoppel, 332, § 1.

The term "quasi estoppel" has been applied to the doctrine of election. 21 C. J. 1202, § 204; Humes Construction Co. *v.* Philadelphia Casualty Co., 32 R. I. 246 (79 Atl. 1, Ann. Cas. 1912D, 906); Hector *v.* Mann, 224 Mo. 228, 246 (124 S. W. 1109, 1116); Lawson *v.* Cunningham, 275 Mo. 128 (204 S. W. 1100, 1105). The elements of reliance, change of conduct, and injury do not enter into quasi estoppels to the same extent as they do in equitable estoppels proper, or estoppels in pais. 10 R. C. L. Estoppel, 698 § 26. So, in quasi estoppel arising from the election of remedies or rights, the party making an election will be barred from resorting to an inconsistent remedy or right, although no injury has been sustained by the party setting up the quasi estoppel. But it can not be said in this case that the successor of the plaintiff as executor, and the defendant in the case at bar, and those whom such successor represents, would not be put to disadvantage or sustain injury if the plaintiff were permitted to prosecute the present action.

In the 6th ground of the motion counsel for the plaintiff insist that we overlooked a statement in the case of *Equitable Life Assurance Society* v. *May,* 82 *Ga.* 646, 655 (9 S. E. 597). That statement is as follows: "Remedies are inconsistent when the right to any of them necessarily yields or concedes the right to another." What right is here referred to as being conceded to another? Necessarily, in relying upon this estoppel, the defendant concedes, certainly for the sake of the argument, that the plaintiff had two rights, and especially the right which he undertakes to enforce in the present proceeding..

In the seventh ground of the motion counsel insist that we overlooked a material fact in the record, and that is, in the portion of the answer of the defendant which was stricken there is no allegation that the plaintiff acted with knowledge of his rights and of the facts. It is true that there is no express statement that he acted with knowledge of his rights; but such knowledge is necessarily implied from the facts stated in this portion of the answer. The contract set up in the second count of the petition was made with the plaintiff, and he was necessarily acquainted with its terms. He is presumed to have known the law and his rights arising under this contract. So the making of an express allegation in

the answer that he knew of his rights was not necessary under the facts therein alleged.

In the eighth ground of the motion it is alleged that the court overlooked par. 5 of sec. 3943 of the Code of 1910, which provides that a creditor may be appointed administrator of the estate of a decedent. It is insisted that the principle stated in the fourth headnote and in the corresponding portion of the opinion would have the effect of estopping a creditor, who was appointed an administrator, from asserting his debt against the estate of his intestate. This position is not well taken. There would certainly be no such inconsistency in such a case as would estop the administrator from asserting any claim which he had against the estate which under the law he was entitled to administer.

After a full and careful consideration of the motion for rehearing, we adhere to the ruling made in the opinion in this case.

*Motion for rehearing denied. All the Justices concur, except Beck, P. J., dissenting.*